## Felt, Appellant, *v.* Hope.

Argued October 1, 1964. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Benjamin A. Katz*, for appellant.

*D. Arthur Magaziner*, with him *Mancill, Sterling, Magaziner, Semans and Hedges*, for appellee.

OPINION BY MR. JUSTICE O'BRIEN, December 3, 1964:

Appellant commenced an action in equity seeking, inter alia, to enjoin appellee from conducting a real estate business in Philadelphia and for an accounting to establish damages allegedly sustained by appellant.

The action is predicated on a sale by appellee to appellant of a real estate business formerly conducted by appellee. The sale was consummated in July of 1960 and its terms were embodied in the following writing: "Dear Sir: I propose to sell you the furniture, fixtures and good will and equipment of my real estate business located at 5913 N. Broad Street, Philadelphia, not including cash, accounts receivable, automobile, animal heads on walls, for the price of five thousand dollars ($5,000.00) to be paid as follows: $1,000.00 to be paid at the time of acceptance of this agreement, and the balance of $4,000.00 at settlement within 30 days thereafter.

"All sales and pending transactions up to date of closing shall be my property and responsibility.

"I shall be permitted to remain with the office as a broker, devoting such time as I see fit and pay to the office one half of the proceeds of any business which I may produce as long as I am connected with your office. All insurance in the office shall remain my property. However, when you secure your insurance license, all new insurance from that date on shall be considered your property.

"I am permitted to remove animal heads and my personal belongings any time I see fit.

HERBERT HOPE

"I have read the above and agree to purchase the real estate business on the terms stated.

CECIL M. FELT".

The parties continued the association contemplated by the sales agreement until August of 1962, at which time a dispute arose as to rights in a telephone listing and appellant insisted that appellee either turn over the listing to appellant or leave. Appellee did leave, taking with him the items he was entitled to under the agreement and established his own real estate office near by, thereby giving rise to this litigation.

The chancellor made findings of fact and conclusions of law and entered a decree nisi, denying the relief prayed for in the complaint. Appellant's exceptions were dismissed by the court en banc, and the decree nisi was made final; this appeal followed.

The conclusion reached by the court below is well summarized in the opinion, as follows: "Plaintiff is not entitled to injunctive relief restraining Defendant from conducting a real estate business because: (1) the agreement between these parties in no way restricts his (defendant's) right thereto; (2) the testimony establishes no omission of such restriction from the agreement by any fraud, accident or mistake; (3) contrary to inference that such restriction may have been intended are the very words of the agreement, viz.: 'I shall be permitted to remain with the office as a broker, devoting such time as I see fit and pay to the office . . . as long as I am connected with your office'; (4) Defendant would have remained 'with the office' had the Plaintiff not evicted him and prevented him to 'continue to be associated with me'.

"On what, then, does Plaintiff's case rest? The matter resolves itself into the dispute over the right to the Bell Telephone Listing 'Livingston 8-0200'. This listing was in the Defendant's name for a long time. But continuously from August 1, 1960 until August 27, 1962, Plaintiff admits the telephone book listing carried both Plaintiff's and Defendant's names under the same telephone, namely, Livingston 8-0200. It is Plaintiff's contention that the agreement provides by the use of the term 'good will' that Defendant was required to transfer this listing to Plaintiff.

"Plaintiff testified that he first told the Defendant that the telephone must be turned over to the Plaintiff and put under his control sometime in 1961.

"There was yet another cause of disagreement between the parties: instead of the 50% of commissions

which the agreement provided was to be paid to the Plaintiff, Plaintiff thought he was entitled to 75%.

"We did not at trial nor did we at argument sur exceptions conclude that this agreement to sell the items named therein and to associate in business one with another was severed because of a telephone listing. Plaintiff is too versed in the ways of business and too keen an appraiser of values to have deliberately, intentionally completely severed relationship association with the Defendant on such an insignificant reason. It was, however, an excuse as was his unwarranted demand to be entitled to 75% instead of 50% of commissions. These were the excuses which Plaintiff used as a justification unto himself for the termination of the association which he no longer needed for his desired status.

"It is these excuses which Plaintiff's counsel persists in denying but which the Trial Judge found permeating the Plaintiff's action. As the fact finding body, the Trial Judge was unable to conclude, as the Plaintiff contended, that the refusal to have the listing and billing of the telephone service under Herbert Hope changed to the listing and responsibility of Cecil M. Felt was the reason for the termination of the association. Completely aside from the fact that the listing of both parties under the same number was acceded to for a considerable time after the agreement was entered into, we must from the testimony conclude that no value was ascribed to the exclusive listing. If it were of any recognized value as an asset, there probably would have been evidence thereon presented. But there was no loss established and we can now say there could have been none. Note: Neither party has this telephone number . . . .

"Additionally, we find that Plaintiff's testimony was not such as, in quality or quantity, carried his burden of proof by anything approaching a fair pre-

ponderance of the evidence. He is not factually entitled to the intervention of equitable process.

"Whatever tack Plaintiff engages in charting his course of argument—and some have been specious and spurious, e.g., in claiming the market value of tangible assets involved in the agreement to be $325, but for 'accounting' purpose and depreciation allowance for Federal Income Tax purposes claiming the value to be $4000—his hopes of recovery are dashed when his arguments are met with the unavoidable obstacle of his own breach of a contract whose terms he had complied with for a long time when compliance inured to his status, but whose terms he chose to discard when he felt his status no longer needed the contract's support. . . .

"Of course, we agree with the proposition that a sale of good will requires that the seller 'should do nothing which directly tends to deprive [purchaser] of its benefits and advantages'.

"But Plaintiff seeks to enjoin Defendant from 'carrying on, maintaining or conducting an office for the conduct of a real estate business' in Philadelphia.

"Yet the contract between the Plaintiff and Defendant provides not merely for the sale of good will and furniture, fixtures and equipment of 'my real estate business' but it provides also that Defendant 'shall be permitted to remain with the office as a broker, devoting such time as I see fit . . .', and insurance shall remain Defendant's, except that from a certain date, only 'new insurance' shall be considered Plaintiff's property. Though staunchly and vociferously he refuses to acknowledge it, Plaintiff has *not* purchased 'good will' in the terms of the reported cases. The good will of his purchase did *not* contemplate the Defendant's separation from the real estate business nor did it contemplate the absence of the competition with Plaintiff; it specifically provided for that competition

and continuance in business, from which Plaintiff for years reaped an income on the stipulated 50% basis and from which, in violation of the contract, Plaintiff wanted 75%." (Emphasis in original)

Our review of this record indicates that the chancellor's findings of fact, approved by the court en banc, are more than adequately supported by the evidence, hence they will not be disturbed on this appeal. *Shydlinski v. Vogt,* 406 Pa. 534, 179 A. 2d 240 (1962); *Durso v. D'Urso,* 409 Pa. 487, 187 A. 2d 270 (1963); *Izzi v. DiTomo,* 413 Pa. 461, 198 A. 2d 521[2] (1964). The legal conclusions reached from these facts follow inexorably. In any event, there is certainly not present the clear error which would require a reversal. *Izzi v. DiTomo,* supra.

Decree affirmed. Appellant to bear costs.