518 A.2d 545

**Helen M. BEASLEY, Appellant at 1772,**

v.

**James E. BEASLEY, Appellant at 2256.**

Superior Court of Pennsylvania.

Argued Feb. 24, 1986.

Filed Nov. 20, 1986.

Larry I. Haft, Philadelphia, for appellant Helen M. Beasley.

Richard Sprague, Philadelphia, for appellant James E. Beasley.

BEFORE: CIRILLO, President Judge, and WICKERSHAM, BROSKY, WIEAND, OLSZEWSKI, DEL SOLE, MONTEMURO, TAMILIA and JOHNSON, JJ.

TAMILIA, Judge:

This matter was appealed by Helen M. Beasley, plaintiff in the court below, and a cross-appeal was filed by the defendant, James E. Beasley.

In her complaint for divorce, the appellant/wife made a claim for equitable distribution and as part of that claim requested that the good will aspect of the husband's law practice be determined to be marital property and subject to equitable distribution. The court denied this request and held that good will is future earnings and that the Divorce Code of 1980 permitted distribution only of present property, the value of which could be ascertained. Thus, the issue raised by appellant/wife is whether or not, under the equitable distribution proceedings of the Divorce Code, good will is a component of the value of a professional practice and to be considered marital property.

In the alternative, appellant/wife asks, if the law practice, conducted as a sole proprietorship, is not marital property must it not nonetheless be appraised for purposes of equitable distribution and alimony as the separate estate of its owner and as an income-generating asset. The court responded affirmatively to this, but to the degree that the files of a professional practice are confidential, it was subject to a non-disclosure order, and only to the extent that it is necessary to ascertain present value of work in progress can there be an appraisal. In doing so, the court limited the extent of intrusion into the personal files of the cross-appellant, James Beasley.

In the cross-appeal, James Beasley alleged that the trial court was without jurisdiction to consider or decide the petition filed by appellant/wife to permit appraisal pursuant to Pa.R.A.P. 1701 because an appeal in the same action was pending in the Superior Court from an Order by Brody, J. granting appraisal fees. The lower court rejected this objection on the basis that the matter was ancillary and incidental to the main suit and found that the main suit could go forward.

Secondly, on cross-appeal, the husband contends good will of his sole proprietorship is not subject to equitable distribution under the Divorce Code of 1980, which position was sustained by the trial court. In counterstatement, cross-appellant/husband also alleged that good will, pertaining to sole proprietorship of a law practice, could not be appraised for the purpose of setting alimony under section 501 of the Pennsylvania Divorce Code. The alimony issue was not raised or addressed in the lower court but Mr. Beasley's position was actually sustained by the trial court when it held that appraisal was permitted for the purpose of determining present value only. It permitted appraisal of work in progress to ascertain the present value of the proprietorship, while rejecting appraisal of good will.

The next issue on cross-appeal is whether or not work in progress of a law practice could be appraised by requiring the examination of case files and financial information relating to cases which could lead to the disclosure of confidences and secrets of the attorney's clients. The lower court rejected the cross-appellant's position even though appellant's expert attributed no value to work in progress. For reasons discussed below, we believe the finding by the trial court is correct.

Lastly, cross-appellant alleges that it would be a denial of due process and an abuse of discretion to order appraisal fees when in fact there had been no determination on the record that the property to be appraised was in fact marital property. The court determined that simply setting an appraisal fee would not be an abuse of discretion and that there would be no prejudice or harm resulting from the appraisal of property even if it later should not be determined to be marital property.

The issues are clearly stated, but prior to analysis of the legal issues, a brief discussion of the facts is warranted.

James and Helen Beasley were married in 1958, at which time Mr. Beasley was employed as an associate of a Philadelphia law firm in which he had no proprietary interest. In January of 1959, he acquired a minority partnership

interest in the law firm of Cohen, Ornsteen and Beasley. Later that year, in December 1959, that firm was dissolved and Mr. Beasley became an equal partner in the firm of Beasley and Ornsteen. Dissolution of Beasley and Ornsteen occurred at the end of 1963 and from early 1964 until the present time Mr. Beasley has continued his law practice as a sole proprietorship.

The record establishes that of the last twenty of the twenty-six years of Mr. Beasley's marriage to Mrs. Beasley, his practice has remained in the form of a sole proprietorship. As a sole proprietor, Mr. Beasley employs fourteen to fifteen attorneys, primarily, in the field of "negligence" or "tort" practice, focusing on medical malpractice, product liability, defamation, a few automobile cases and some incidental matters. At the time of their marriage, Mr. Beasley's annual salary was approximately $6,000, whereas his annual earnings now exceed that amount substantially, as established by the parties' 1982 joint federal income tax returns. All of the physical assets of his practice are owned by him. Mr. Beasley alone determines the compensation of his employees and they have no control over the operation of the law practice. He pays them no compensation over and above their salaries for any revenue they generate for the firm or any cases they may attract to the firm. The practice is, however, conducted under the name of Beasley, Hewson, Casey, Colleran, Thistle and Erbstein.

Some of the attorneys associated with Mr. Beasley have dual professions. Hewson is a physician and Thistle is an engineer. Clients frequently come to the practice because of one of the other attorneys and not because of Mr. Beasley. Many of the cases in the office are handled entirely by attorneys other than Mr. Beasley, who may himself have no knowledge of the files and may never have discussed the client with the other attorney. Each of the attorneys associated with Mr. Beasley may leave at any time and each client would, in the event his attorney left, determine whether he wished to take his case and follow the departing attorney or remain with Mr. Beasley's office.

The cases handled by the attorneys associated in the practice are conducted on a contingent fee basis. Among the cases are disciplinary cases, malpractice cases and defamation cases. Some, as with the disciplinary matters, are matters of sensitivity, which have received no public exposure and may not entail litigation. Even where litigation has started and the matters are of public record, the files contain extremely sensitive, confidential information regarding the parties, witnesses, the conduct of the cases or confidences and secrets of the clients.

The attorneys in this law practice keep no time records and Mr. Beasley does not know nor can he estimate the percentage of his time spent on the office operation as opposed to the practice of law. Each year, during the course of this marriage, the balance of monies generated by Mr. Beasley's practice of law, which were not returned to the proprietorship as business expenses, were drawn out and used jointly by Mr. and Mrs. Beasley.

Mrs. Beasley in no way contributed to Mr. Beasley's education, creation of the business or operation of the law practice, and aside from her employment as a secretary during the first year of marriage, she has not been employed outside of the home.

We will consider the issues as they developed in this case, but it appears necessary to first determine whether the issue raised on cross-appeal, that the lower court was prohibited from exercising jurisdiction in this matter by reason of Pa.R.A.P. 1701, stays any proceeding in the court below, during the pendency of that appeal. That appeal resulted from an Order by Judge Brody in the lower court granting $3,500 in appraisal fees when Mr. Beasley and his counsel of record were not present at a hearing. We need not go into the merits of that Order as it was decided by this Court by Opinion Per Curiam filed September 28, 1984, that the appeal must be quashed as there were no exceptions filed and final judgment was not entered on the docket. In that Opinion, it was, however, stated that this was an appealable issue citing *Sutliff v. Sutliff*, 326 Pa.Su-

per. 496, 474 A.2d 599 (1984). However, *Sutliff* has been overruled by the Pennsylvania Supreme Court in *Fried v. Fried*, 509 Pa. 89, 501 A.2d 211 (1985), which holds that ancillary matters in a divorce proceeding must await a final decree of divorce before being appealed.

The present contention of lack of jurisdiction, based on the matter being on appeal, is that the Order of the Superior Court is presently subject to review by the Supreme Court which has before it a petition for allowance of appeal upon which it has not yet acted. In light of *Fried* and the findings of the Superior Court in quashing that appeal, we may not assume that Mr. Beasley will prevail. However, aside from that, we believe there is no question that this case can proceed to the merits despite an appeal on the issue of the appraisal fee.

In *Beasley v. Beasley*, 348 Pa.Super. 124, 501 A.2d 679 (1985), an earlier appeal in this case on the issue of whether or not bifurcation was an appealable matter, (as an Order which is separable from and collateral to a cause of action, appealable under certain circumstances), Judge Wieand, author of that Opinion, found as follows:

> Those circumstances, all of which must be present [for appeal to lie], are as follows:
>
> '[the order is] separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.' *Cohen v. Beneficial Industrial Loan Corporation*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 [1949].

*Id.*, 348 Pa.Superior Ct. at 127, 501 A.2d at 680. *Also see Fried, supra; Pugar v. Greco*, 483 Pa. 68, 394 A.2d 542 (1978). "A final order is one which usually ends the litigation or alternatively, disposes of the entire case."

The order of appraisal from which appeal was taken does not involve a right which is too important to be denied immediate review. The issue of the appraisal fee, aside from compliance by the court with due process, will turn

upon the final determination of the matter sub judice. *See* Pa.R.A.P. 1701(c).

The record also shows that Mr. Beasley appealed the appraisal Order before appraisal was actually undertaken and before the lower court had the opportunity to certify the issue to this Court as a controlling question of law as to which there is a substantial ground for difference of opinion (Pa.R.A.P. 312, 1311 and 1312, interlocutory appeal may be taken by permission under 42 Pa.C.S.A. § 702(b)). The issue, not having been certified or accepted, was not an appeal which would result in a stay in the lower court.

That leads us to the subsequent certification of the matters sub judice, which are in proper form for our consideration.

Ancillary to the question of jurisdiction of the lower court to proceed in that case is consideration by this Court as to whether or not we should accept certification of the issues before us. (Pursuant to 42 Pa.C.S.A. § 702(b), interlocutory appeals by permission, governed by Pa.R.A.P. 312, 1311 and 1312). The temptation is great in this case, and might be justified under *Fried, supra,* to reject the certification and return the case to the trial court for a full determination of all issues as presented and ultimately to bring the matter back to the Court when a final judgment is entered. Except for one aspect of it, this case cries out for such a treatment. Already it has involved multitudes of proceedings and appeals and the parties have proceeded in a piecemeal fashion to have the rights of the parties adjudicated. This case was commenced in October of 1981 and, well into the year of 1986, it has still not progressed to the merits in the court below, despite the extraordinary number of pleadings, filings, appeals and hearings which appear to carry the adversary nature of the proceedings to the ultimate degree. As Judge Wieand stated in the earlier appeal,

> [t]he right of appeal is intended to confer upon an appellate court the power of review; it has never been intended to vest in an appellate court the power to intervene in matters pending before the trial court. So long as ac-

tions remain open, undetermined and unfinished, this Court will not intrude by deciding premature appeals. (citation omitted)

*Beasley*, 348 Pa.Superior Ct. at 128, 501 A.2d at 680.

The exceptional ingredient in this matter is the issue concerning the right of appraisal of a professional sole proprietorship and the possibility of irreversible harm by the intrusion into confidential records and relationships of clients, whose rights are superior to those of the parties in resolving their private litigation. If we await a final decision in this case, those rights, if inviolate, will be lost. *See Cohen, supra.* Also, the issue of value of goodwill in a sole proprietorship law practice as marital property is one of first impression in Pennsylvania and one of such commanding importance that it is believed, before the case moves forward in the lower court, this Court should rule on those considerations. For these reasons we proceed to consider the issues on their merits, first of which is the determination of whether good will of a sole proprietorship is marital property.

The trial court, by its Opinion and Order dated March 30, 1984, held "the law practice conducted by defendant James E. Beasley, as a sole proprietorship, exclusive of good will factor, is marital property as defined by the Pennsylvania Divorce Code of 1980." Despite the lower court's refusal to include good will as a factor of the law practice as marital property, it did conclude that Mrs. Beasley was entitled to an appraisal of Mr. Beasley's interest in the law practice for the purpose of determination of the present value of that practice including work in progress if any. Appellant/wife contends that the court was in error in refusing to consider good will as a factor in marital property subject to distribution whereas the cross-appellant/husband alleges the court was in error in permitting an appraisal for the purpose of present value and particularly allowing any consideration of work in progress as present value. These issues will be considered separately and discussed below.

The rule, until recent times, was stated in Sale of "Good Will" of Law Practice, 79 A.L.R.3d 1243:

In the very few reported cases which have dealt specifically with the subject under annotation, the courts have agreed that despite the fact that the good will of a law practice has an ascertainable value for certain purposes, it is not an asset which may be sold or transferred for a consideration. Thus, it has been held that the good will or personal professional reputation of an attorney, does not survive him, and may not be sold or transferred upon his death. And in what is apparently the only case in which the court directs its full attention to the question of the validity of a contract for sale of good will of a law practice, under the restrictive guidelines set forth in the ABA Canons of Ethics, the court in *Geffen v. Moss* (1975) 53 Cal App 3d 215, 125 Cal Rptr 687, 79 A.L.R.3d 1232, infra § 4, refers specifically to pertinent regulations set forth in the California Business and Professions Code, the State Bar Act (of California), and the ABA Canons of Ethics as prohibiting the sale of a law practice as a going business.

As defined in Corpus Juris Secundum:

**Goodwill** 38 C.J.S. § 1. Definition

Good will is that element of value which inheres in the fixed and favorable consideration of customers, arising from an established and well-known and well-conducted business. It is distinguishable from the "going value" or "profits" of a business.

At **Goodwill** 38 C.J.S. § 3. Adherence to Place, Name, Property, or Business, it is stated:

Good will exists as property merely as an incident to other property rights and is not susceptible of separate ownership or disposition. It may attach to the place, name, property, or reputation of a business, but some decisions hold that it may not adhere to a business or profession dependent solely on the personal qualities of the owner.

The only reported Pennsylvania case on the sale of good will of a professional man is *In re Baer's Estate*, 38 D. & C. 409 (1940) which held there is no legally recognized property right in the nature of good will attached to the practice of a professional man, such as to continue after his death.

**Good Will** 38 Am Jur2d § 1. Definitions defines good will in its narrowest case "as the probability that old customers will resort to the old place", to the broadest,

> the advantage or benefit, which is acquired by an establishment, beyond the mere value of the capital stock, funds, or property employed therein, in consequence of general public patronage and encouragement, which it receives from constant or habitual customers, on account of its local position, or common celebrity, or reputation for skill or affluence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices.

J. Story, *Commentaries on the Law of Partnerships*, § 99, at 170 (6th ed. 1868).

The appellant/wife would have us rely on the very recent line of cases expanding good will to capitalization of personal reputation and relies primarily on the testimony of Seymour Rubin, C.P.A., to establish that good will is a factor in establishing the value of marital property and that it is essential to its measurement to look at the confidential files in the office of Mr. Beasley.

For purpose of our considerations, the extensive testimony of Mr. Rubin may be summarized as follows. Various computations are made which result in an "adjusted income" figure. Deduction is then made for overhead and for reasonable compensation, utilizing well known law firm economic surveys. A second deduction is then made for "fair rate of return of net tangible assets." The resulting figure is "excess earnings." To arrive at a calculation of good will, these excess earnings are capitalized using an appropriate multiple. The amount attributable to good will is then added to the cumulative value of the practice's tangible assets to achieve a final valuation of the law

practice. In evaluating the tangible assets, competent trained people would consider the value of computers, word processors, typewriters, telephones, motor vehicles, the law library and other physical assets. The evaluation would also review tax returns, accounts receivable, actual original books and records of the entity, including accounts receivable records and work in progress records, bank statements, journal ledgers and independent accountant's year-end worksheets and other things of that nature. As to the good will of the proprietorship, this would be an intangible asset in the evaluation; the appraisal would be started with the tax returns, the reputation of the lawyer, reviewing records for the prior five years to see the type of practice Mr. Beasley had and to determine what he had done for five years.

The evaluation would include the past work and present work in progress on files that were opened as of the end of each of the years that he was examining for a determination of costs, advances, details of pension and profit sharing plans, insurance policies, employment contracts, or employee compensation arrangements to establish a determination of reasonable compensation so that the element of good will can be calculated from the excess over reasonable compensation that was obtained by the firm's activities.

Mr. Rubin testified that he would handle the confidentiality by not disclosing or identifying any of the files or names of persons contained in those files and do whatever was required by a non-disclosure Order issued by the court. In this way, Mr. Rubin testified he could ascertain the good will which he defined as "the valuation of the excess earnings that are derived from any business endeavor, whether it would be a professional practice or what have you, over and above a fair rate of return on net tangible assets—and after making allowance for reasonable compensation for the owners of that particular endeavor."

Appellant/wife contends that the majority of jurisdictions which have considered the issue have held that professional good will is subject to equitable distribution in di-

vorce. Appellant/wife relies on the definition of good will stated by Mr. Rubin and alleges that by deducting the average of actual earnings in the amount reflecting the sum of a reasonable return on the enterprise's capital and the reasonable value of the professional's services, the result in excess earnings which are then capitalized over a specific period of years in accordance with accepted accounting procedures, provides a present value that is ascertainable and capable of distribution. As authority for this position, cases from various jurisdictions, as well as law review and professional journal articles, are cited. *Stern v. Stern,* 66 N.J. 340, 331 A.2d 257 (1975); *Levy v. Levy,* 164 N.J.Super. 542, 397 A.2d 374 (1978); *Mueller v. Mueller,* 144 Cal. App.2d 245, 301 P.2d 90 (1956); *also see In Re Marriage of Ronald Keith Hull,* 712 P.2d 1317 (Mont.1986); *Raggio, Professional Goodwill and Professional Licenses as Property Subject to Distribution upon Dissolution of Marriage,* 16 Fam.L.Q. 147, 154 (1982). This is known as the "capitalization formula" which holds that a future flow of income has a present value which can be reduced to a lump sum payment. Appellant would also find authority in the Divorce Code of 1980 in its mandate under 23 P.S. § 102(a)(6) to "[e]ffectuate economic justice between parties who are divorced or separated and ... insure a fair and just determination and settlement of their property rights" and in subparagraph (b), "The objectives ... shall be considered in construing provisions of this act and shall be regarded as expressing the legislative intent."

Further, reliance is placed on 23 P.S. § 401(f), that all property acquired by either party during the marriage is presumed to be marital property regardless of whether its title is held individually or by the parties in some form of co-ownership. Additionally, appellant points out that in *Commonwealth ex rel. Gutzeit v. Gutzeit,* 200 Pa.Super. 401, 189 A.2d 324 (1963) (allocatur denied), good will is a valuable asset. In that case, good will was evaluated in the context of a support order to determine the value of a one-man company with thirteen employees. Good will was also considered by this Court in *Smith v. Munizza,* 170

Pa.Super. 122, 84 A.2d 352 (1951) and *Boni v. Boni*, 302 Pa.Super. 102, 448 A.2d 547 (1982), and by the Supreme Court in *Felt v. Hope*, 416 Pa. 118, 206 A.2d 621 (1964). It would appear to be incontrovertible that good will is a valuable asset and in proper context must be considered in valuation of a property.

The context most cited is that of a corporation or business entity in which it can be clearly calculated that there is an excess value beyond the fair return of compensation for work performed. It is the contention of the cross-appellant/husband that a sole proprietorship of a law firm is unique in the sense that there is no value to be transferred upon the dissolution of a sole proprietorship. In effect, there cannot be a sale of a sole proprietorship, and since no sale is possible, the good will aspect of such a sole proprietorship in fact does not exist. This was the position accepted by the trial court and the one that seems to be most appropriate under the circumstances and facts of this case. *See* **Goodwill** 38 C.J.S. § 3, *supra.*

A sole proprietorship can be distinguished from a partnership, or a professional corporation, to which an ascertainable value can be ascribed for the purpose of buying into or withdrawing from the relationship; *but it is the association, or some share of it, that is valued* and not the individual partner upon which the value is placed. *See Geesbright v. Geesbright*, 570 S.W.2d 427 (Tex.Civ.App. 1978). The productivity or work effort of the partner is often not the measure of the share possessed by various members of the association. That share is a measurable and marketable commodity and is generally defined by contract. When a sole proprietor terminates his activity, the lights go out, the value of the sole proprietorship is extinguished and is non-transferable; the clients in the law firm cannot be sold, they can only be transferred and they have the absolute right to select their own future representation; nothing remains in residue which could be determined of value aside from tangible physical property, or work performed on partially completed cases, which may

entitle the lawyer or his heirs to a quantum meruit payment. Appellant argues that if Mr. Beasley, tomorrow, converted his sole proprietorship to a partnership he could obtain payment from the proposed partners for admission to the firm based on the value of good will of his law practice. While this might be so, the entity, the sole proprietorship, which is the whole, would be diminished in terms of Mr. Beasley's share of the income and profits to the degree of division in exchange for monies he received in capitalization of the firm, and the theoretical value would be unchanged.

The key issue as to good will of a sole proprietorship has to do with the value, if any, which can be attributed to it, causing it to be subject to distribution. Aside from a share arrangement in partnerships or professional corporations, the only commodity subject to good will considerations in a sole proprietorship is the professional reputation. A number of cases have considered this to be of ascertainable and divisible value and numerous articles have discussed this issue.[1] The testimony of appellant/wife's expert, Mr. Rubin, capsulates the underlying theory espoused by those cases (supra). The major cases to the contrary are *Nail v. Nail*, 486 S.W.2d 761 (Tex.1972) (since skill, experience and reputation—good will are not distinguishable from the professional (doctor) and would be extinguished in the event of death, retirement or disablement or sale of the practice, it may not be characterized as an earned or vested right or

---

**1.** See: Adams, *Professional Goodwill As Community Property: How Should Idaho Rule?*, 14 Idaho L.Rev. 473 (1978); Foster, *Equitable Distribution of Professional Degrees, Licenses and Goodwill,* 1 Fairshare 9 (Jan.1983); Kennedy & Thomas, *Putting a Value on: Education and Professional Goodwill,* 2 Fam.Advoc. 3 (1979); Krauskopf, *Marital Property at Marriage Dissolution,* 43 Mo.L.Rev. 157 (1978); Raggio, *Professional Goodwill and Professional Licenses as Property Subject to Distribution upon Dissolution of Marriage,* 16 Fam.L.Q. 147 (1982); Lurvey, *Professional Goodwill on Marital Dissolution: Is it Property or Another Name for Alimony?,* 52 Cal.St.B.J. 27 (1977); Note, *Professional Corporation May Have Valuable Goodwill, Apart from Person of Individual Member, that Must Be Considered in Property Settlement on Divorce,* 11 St. Mary's L.J. 222 (1979). See also: Annot., 52 A.L.R.3d 1344 (1973); 24 Am.Jur.2d *Divorce and Separation* §§ 899, 945 (1983); 38 Am.Jur.2d *Good Will* § 8 (1968); 38 C.J.S. *Goodwill* § 3 (1943).

one which fixes any benefit in any sum at any future time); *Austin v. Austin,* 619 S.W.2d 290, 291 (Tex.Civ.App.1981) (good will of an *ongoing,* noncorporate, professional practice is not the type of property that is divisible as property in a divorce proceeding); *Stephens v. Stephens,* 625 S.W.2d 428 (Tex.Civ.App.1981) (there is no separate good will where the earnings of a sole practitioner depend on his individual skill and experience); *Holbrook v. Holbrook,* 103 Wis.2d 327, 309 N.W.2d 343 (1981) (the reputation of a partner in a law firm was not property subject to division in a divorce action).

While the position of the Texas courts appears solid despite the numerous findings in other jurisdictions to the contrary (see footnote 1, *supra* ), the inescapable logic of that position becomes evident upon consideration of the effect on an award of alimony after assessing value to good will based upon reputation, skill and experience. The good will of a sole proprietorship is related only to his future earnings, since an actual sale produces no value. To assess a value on future productivity and to award a proportionate amount to the spouse is akin to making a lump sum alimony payment since it is based on future earnings of the paying spouse. If, in addition to this payment, alimony is awarded, there is, in effect, a double charge on the future income of the paying spouse. Even without an alimony award, a fixed sum, not having the designation as alimony, carries none of the flexibility of an alimony award derived from its modifiability and, therefore, may penalize the payor if he suffers reverses, unemployment or dies. *See Lurvey, Professional Goodwill on Marital Dissolution: Is It Property or Another Name for Alimony?,* 52 Cal.State Bar J. 27 (1977).

In *Holbrook, supra* at 350, 309 N.W.2d at 354, the court said:

The concept of professional goodwill evanesces when one attempts to distinguish it from future earning capacity. Although a professional business's good reputation, which is essentially what its goodwill consists of, is certainly a thing of value, we do not believe that it

bestows on those who have an ownership interest in the business, an actual, separate property interest. The reputation of a law firm or some other professional business is valuable to its individual owners to the extent that it assures continued substantial earnings in the future. It cannot be separately sold or pledged by the individual owners. The goodwill or reputation of such a business accrues to the benefit of the owners only through increased salary.

In an exhaustive article, *Marital Property at Marriage Dissolution*, 43 Mo.L.Rev. 157 (1978), Krauskopf states in her conclusion:

> The second round of appellate decisions will reveal the depth and sophistication of the courts' acceptance of the partnership theory of marriage. If the fruits of all efforts of each spouse are, indeed, to benefit the family created by the marriage, then all interests of value, whether contingent (nonvested retirement benefits), nonassignable (personal injury cause of action), unmarketable (goodwill of a professional practice), or cloaked in separate title (increased value of prior owned close corporation or realty), developed by the efforts of either spouse during the marriage should be subject to the discretionary division of the trial court.

*Id.* at 198. The single exception to contingent value to be considered under the partnership concept of acquisition of marital property, which is both presently unascertainable and subject to double assessment through alimony, is professional good will. Thus no matter how ingenious the formulae are in establishing "value," assessing it as value and subjecting the same assessment to alimony is inequitable and prohibited by the Divorce Code, 23 P.S. § 102(a)(6), 23 P.S. § 401(d).

■ In cases where there is a contingent fee arrangement, the value of work completed, or work done and the costs advanced, is absorbed by the sole proprietor and cannot be recouped until the case is completed. This cannot be equated with those cases in which a fee is fixed based

upon the work to be performed whereby an appraisal can be made establishing the value to the time of distribution as a recoverable asset. *See Sundheim v. Beaver Co. Bldg. & Loan Assoc.,* 140 Pa.Super. 529, 14 A.2d 349 (1940); *Tranberg v. Tranberg,* 456 F.2d 173 (3d Cir.1972); *In Re Normal Towel Service Inc.,* 18 B.R. 949 (Ill.1982); *Detroit Bank & Trust Co. v. Coopes,* 93 Mich.App. 459, 287 N.W.2d 266 (1979). However this process is construed by the I.R.S., (appellant contends value can be fixed as if at the time there was a sale) it cannot be a sale under standards controlling the practice of law as a profession. If there was a fee prorated upon work performed, then the amounts would have been collected and presumably absorbed in the performance of the work that was done. To the extent there was value received, this presumably would have been absorbed in the salaries and overhead and profits of the proprietorship. The amounts collected in the future would follow the performance of the work and would be payable to the person performing that work.

It is tenuous and risky to attempt to evaluate the likely return on contingent fees and as such, no value can be placed on them for purposes of equitable distribution. However, the Divorce Code is flexible and in this respect, the income producing capacity reflected by such cases can be estimated on the basis of compensation for completed cases and, therefore, that record should be sufficient to project the earning capacity of the attorney without speculating on the nebulous return that might be derived from examining active contingent fee cases. Permanent alimony, as support, is modifiable, and should the expectations vary either upward or downward, adjustments can be made by the court in an expeditious and reasonable manner. For support, and recently for alimony, *earning capacity* has been one of the considerations upon which an award may be based. In *Hodge v. Hodge,* 337 Pa.Super. 151, 486 A.2d 951 (1984), we held that increased earning capacity through acquisition of a professional degree during marriage was not marital property subject to distribution, but it would be

a consideration in awarding alimony. Similarly, and perhaps more to the point, this Court said in *Pacella v. Pacella*, 342 Pa.Super. 178, 492 A.2d 707 (1985):

> Nor did the trial court err in considering appellant's earning capacity rather than his salary, as a basis for calculating the appropriate amount of the award. The Divorce Code directs that a trial court "grant or withhold alimony according to the actual need and ability to pay of [ ] the parties...." in order to "effectuate economic justice between [the] parties[.]" 23 Pa.C.S. § 102(a)(6). While ordinarily this means that alimony should be based upon actual earnings, that is true only because ordinarily actual earnings accurately measure "ability to pay." Moreover, in the context of support proceedings, we have held that earning capacity, rather than actual earnings, is the determinative factor in ascertaining a party's ability to pay support, *Commonwealth ex rel. Raitt v. Raitt*, 203 Pa.Super. 226, 199 A.2d 512 (1964),.... Where we have found, in support cases, that actual earnings did not reflect earning capacity, we have approved the use by trial courts of a variety of means to arrive at earnings figures that accurately reflect a party's real wealth. *See e.g., Commonwealth ex rel. Maier v. Maier*, 274 Pa.Super. 580, 418 A.2d 558 (1980) (where supporting spouse is sole stockholder of corporation and determines his own salary, court may pierce corporate veil and use corporate income as basis for determining earning capacity); *Commonwealth v. Miller*, 202 Pa.Super. 573, 198 A.2d 373 (1964) (where supporting spouse is self-employed, net income, as it appears on income tax forms, is not "infallible" measure of real wealth; court accordingly may add back portion of depreciation deduction in calculating amount of support owed); *Commonwealth ex rel. Gutzeit v. Gutzeit*, 200 Pa.Super. 401, 189 A.2d 324 (1963) (in determining supporting spouse's earning capacity, court should consider not only salary paid by wholly owned corporation, but all prerequisites [sic] provided by corporation.) As a matter of economic common sense, earning

capacity is equally relevant whether the proceeding be for support, alimony pendente lite, or alimony after divorce. *Id.*, 342 Pa.Superior Ct. at 186–88, 492 A.2d at 712.

In this manner, the wife will not receive, as property or alimony, that which has no *present* value from which she may be unjustly enriched, whereas the husband will not have a windfall from income or property that has only a present potential but which will be realized in the future.

█ Contingent fees, while having a degree of similarity to pensions, do not have the same expectation of vesting which permits greater certainty in fixing value and for establishing present worth. Of course, in those cases wherein the professional is paid for service performed, a clear appraisal of the value of uncompensated work in progress can be made upon which a determination of marital property and division of that property can be based. This can be ascertained through bookkeeping records, which do not involve the evaluation of confidential files.

There is no question that the law firm itself has value which is ascertainable. For this purpose, the trial court permitted a controlled appraisal to look into the files of the firm, even though confidential, for the determination of that value.

█ The right of appraisal provides an extremely difficult issue to resolve because aside from the interests of the parties in whatever business the firm may pursue, there is the right of confidentiality and for the clients to have their personal affairs be absolutely privileged and private. On balance, it would appear that the trial judge approached this in a sensible manner. It is undeniable that he carefully considered the rights of the individual clients, the ethical standards of the bar association and the ability of the court to exercise control over such confidential information. (Code of Professional Responsibility, Canon 4, Disciplinary Rule 4–101(A), (B), (C), (D); Ethical Consideration 4–1, 4–4.) He permitted the appraisal pursuant to EC 4–2, DR 4–101(C)(2) and (4) which authorizes revelation of client case

files where required by law or court Order.[2] Unquestionably, lawyers cannot be carved out as a special category of professionals who are immune from evaluation as to present value, but to permit inquiry into confidential files for the purpose of evaluating contingent fees as potential earnings is inappropriate. The review by an outsider of confidential files, which can contain information which would never be revealed except to the lawyer in a confidential relationship, would have a chilling effect on that relationship which far outweighs the need to appraise those files for these purposes. With these limitations, it is believed that adequate means are provided by Pa.R.C.P. 1920.-22, for this purpose.[3]

We, therefore, hold that good will of a sole proprietorship under these facts is not an element of present value; we also hold that the records of the firm may not be appraised to determine present value and to evaluate earning capacity.[4]

2. **DR** 4–101.(C)(2)

**DR**

4–101. Preservation of Confidences and Secrets of a Client

(C) A lawyer may reveal:

(2) Confidences or secrets when permitted under Disciplinary Rules or required by law or court order.

**EC**

4–2. Details the considerations for preserving the confidences and secrets of a client and restates the provision of DR 4–101(C)(2).

3. Pa.R.C.P. 1920.22 provides:

**Rule 1920.22 Discovery**

(a) Except as provided by subdivision (b), there shall be no discovery in an action of divorce or for annulment or a claim which has been joined as permitted under the Divorce Code unless authorized by special order of court.

(b) When a claim is made for alimony or the determination and distribution of property rights, any party may serve upon any other party as of course within such time as not to delay the trial interrogatories limited to those claims. The practice and procedure shall be governed by the rules of civil procedure governing depositions and discovery.

4. That is not to say that good will expressed as a share of a partnership or professional corporation, with an ascertainable value which can be purchased or transferred, is to be excluded. Such is not the case here.

The major contention of the cross-appellant/husband is that since this is an office that works entirely on a contingent fee basis, there cannot be an evaluation of present value by evaluating the work in progress. The expert for appellant/wife agreed that work in progress is not a basis for assessing present value. This would appear to be true.

We have previously held that property for purposes of marital distribution must be a liquidated amount in a tort claim. *Hurley v. Hurley*, 342 Pa.Super. 156, 492 A.2d 439 (1985). Just as we could not establish good will based on contingent fee earnings, as at best these are potential earnings, so must we limit consideration of contingent fees for purposes of present value. Under these circumstances, no significant distinction exists between good will and present value as to contingent fees. If the firm ceased to exist or the appellee/husband retired or withdrew from the firm, there would be no capitalization of contingent fees for the reasons discussed earlier as to good will.

 While this appraisal aspect of the case has another overtone, which is alleged by the appellant/wife, it was neither considered by the lower court nor is it a factor in our finding against the appraisal of the law practice. That has to do with the appraisal of good will for purposes of alimony. As we have held that in this case good will is not a factor in terms of the value of the sole proprietorship for purposes of equitable distribution, neither can it be a factor for evaluating the amount to be awarded in alimony. *Gutzeit, supra,* does not apply in this case since there, the court considered a business corporation which had substantial assets and good will beyond the earnings and income of the firm which would generate substantial profits upon the sale of that business. No facts similar to that exist in this case. No sale can be made here from which a profit may be derived. Therefore, to consider the value of the property to include good will for the purposes of establishing alimony would be to include a non-existent asset. That is not to say that the appraisal of the present value of the law firm (not including good will), Mr. Beasley's income, and potential

earnings, and those related factors are not relevant considerations under the Divorce Code, 23 P.S. § 501, Alimony.

The final issue in this case has to do with whether an appraisal for the purposes of establishing value can be made without first determining what is marital property subject to distribution. This is a matter that would appear to be within the discretion of the trial court. Unquestionably, a determination of what is marital property in many cases can easily be made prior to any appraisal of the value of that property. Pursuant to 23 P.S. § 401(d), there is a presumption that all property, whether real or personal, acquired by either party during the marriage is marital property, subject to limited exceptions under section 401(e). Since this presumption has not been overcome and the issue relates to the transfer of airplanes by Mr. Beasley to a trust fund for his sons, with further action being stayed by the court, appraisal is proper.

In a case as involved and complex as this one, the court could properly find that the appraisal would establish a two-fold purpose; that it would divulge both the value of the assets and particularly in regard to the airplane, which appears to have been placed in trust under questionable circumstances, aid in determining whether that trust, in fact, is not an improper divestiture of marital property. Since appraisals normally would include the time of acquisition of an asset, its increase or decrease in value, and whether or not there was a sale or divestiture or whether there was some return or equivalency derived from a transfer, it would serve to aid the court in making a determination both as to value and as to marital property. It would serve the dual purpose of appraisal and accounting. There can be no prejudice to the defendant by this evaluation and it would forward the progress of this case.

In summation, we find: review of this case is not prevented or stayed by the pendency of the matter of an award of appraisal fees before the Supreme Court; the review is not prevented as being interlocutory as it presents substantial questions of fact and law which have been certified to us

for consideration; good will is not an element of value for purposes of equitable distribution involving a sole proprietorship of a professional practice; good will is not an element for alimony considerations of a sole proprietorship of a professional practice; contingent fees may not be considered to establish present value or good will; contingent fees may not be considered for the purpose of establishing a basis for an alimony award since they are unascertainable earnings; appraisal of the law practice, not including confidential records, is permissible to ascertain present value and basis for alimony; and appraisal of property transferred into a trust is permitted without a prior determination that it is marital property.

We, therefore, modify the Order of the lower court by eliminating therefrom the direction that "client files" be delivered to Helen Beasley or her selected appraiser; as modified, the Order is affirmed.

WIEAND and MONTEMURO, JJ., concur in the result by TAMILIA, J.

DEL SOLE, J., files a dissenting opinion which is joined by JOHNSON, J.

DEL SOLE, Judge, dissenting:

I respectfully dissent based upon my belief that the permission to appeal was improvidently granted, and the appeal should be quashed.

The Majority citing *Fried v. Fried*, 509 Pa. 89, 501 A.2d 211 (1985) and *Cohen v. Beneficial Industrial Loan Corporation*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) notes that rejection of certification "might be justified". Majority Opinion at 29. It finds, however, an "exceptional ingredient" in this case, the potentially lost rights of those *clients* who may be irreversibly harmed by intrusion into their attorney's confidential files. I believe this rationale is flawed for two reasons.

The test applied to a question of appealability in *Fried v. Fried*, was as follows:

(u)nder *Cohen,* an order is considered final and appealable if (1) *it is separable from and collateral to the main cause of action;* (2) *the right involved is too important to be denied review;* and (3) *the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost.* (Citations omitted).

*Fried v. Fried,* 509 Pa. at 94, 501 A.2d at 214, *quoting Pugar v. Greco,* 483 Pa. 68, 73, 394 A.2d 542, 545 (1978).

The Majority would find, under the third prong of the *Cohen* test, the *client's* rights to confidentiality will be "irreversibly harmed" by the failure of this Court to grant permission to appeal. However, prong three of the test speaks to lost rights which belong to the *parties,* not the parties' clients.

In addition, the Majority's conclusion that an appeal is proper here because the case contains an issue of "commanding importance", is not based on the appropriate standard. *See: Toll v. Toll,* 293 Pa.Super. 549, 439 A.2d 712 (1981).

This court does have discretionary power to hear an appeal of an interlocutory order that has been certified by the lower court as presenting a "controlling question of law as to which there is substantial ground for difference of opinion and (where) *an immediate appeal from the order may materially advance the ultimate determination of the matter* (.)

*Toll v. Toll,* 293 Pa.Super. at 554, 439 A.2d at 715 (emphasis added), citing 42 Pa.C.S.A. § 702(b).

While the certified issues in the present appeal have not been previously treated by the appellate courts of this Commonwealth, I am not convinced that immediate appellate review will materially advance the ultimate termination of the case. Rather, I perceive this appeal as premature and inappropriate since it serves to add yet another delay to disposition of this litigation.

Assuming this court were to rule that the interlocutory appeal in this case should be quashed, I believe it would

expedite the case without serving to expose the confidential matters included in a client's file. For appraisal purposes, most of the information necessary to evaluate the potential worth of a claim is based upon information gleaned through discovery, and is therefore readily available without breaching any duties of confidentiality. Materials sought for appraisal which counsel deems are confidential and nondiscoverable are best handled by the trial judge supervising the evaluation on a case-by-case basis. If a situation were to develop where a decision is issued and a party fails to comply with a court order requiring information to be disclosed, a contempt citation would be issued and sanctions would be imposed. An appeal from this type of final order would then be appropriate. *See: Hester v. Bagnato,* 292 Pa.Super. 322, 437 A.2d 66 (1981).

JOHNSON, J., joins.