## SANDERSON et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 364.

Circuit Court of Appeals, Second Circuit.
June 2, 1930.

Everett Masten and Henry C. Field, both of New York City (Everett Masten, of New York City, of counsel), for petitioners.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key and Harvey R. Gamble, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and John McC. Hudson, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The question here is whether a sale of the good will of the firm of Sanderson & Son, in 1921, for the sum of $125,000, involved any profit over its value March 1, 1913, so as to subject Lloyd B. Sanderson, one of the partners, to an income tax thereon. The Commissioner found that the good will had no value in 1913 and that the entire sum of $125,000 represented profit.

The business of Sanderson & Son was that of steamship agents, and there was evidence that it was conducted largely on a commission basis and did not require the use of much capital, but just what was the limitation of the words "did not require the use of much capital" is not apparent and was not shown.

Under a contract between Sanderson & Son and the Royal Mail Packet Company, dated October 10, 1921, the firm agreed to sell to the Royal Mail for $125,000 its good will and the full benefit thereof and of its agencies (except those connected with the Ellerman's Wilson Line) together with the right to use the firm name. This agreement also provided that the packet company would organize a corporation under the title of Sanderson & Son, Incorporated, to consummate the purchase. It contemplated that Lloyd B. Sanderson should enter the employment of the Royal Mail and provided that neither he nor his partner, Pentz, should enter into a steamship agency business for a period of ten years. The corporation of Sanderson & Son, Incorporated, was set up and the transfer of the good will and business of the partnership was effected in 1921 on the payment of $125,000 as agreed. The share of Lloyd B. Sanderson therein was $41,666.68.

The Commissioner held that this entire sum of $41,666.68 represented profit and was taxable as income of Sanderson. The latter thereupon filed a petition with the Board of Tax Appeals for a redetermination of the deficiency tax, and upon his death during the pendency of this proceeding his executors became parties petitioners. The Board sustained the Commissioner.

Yearly net earnings of the partnership of Sanderson & Son from 1897 to 1913, inclusive, averaged about $23,400, for the years 1909 to 1913, inclusive, averaged $23,223.60, and for the years 1911, 1912, and 1913 averaged $33,224, but these figures involved no deduction for interest on any capital employed or for the services of the partners.

John H. Thomas, vice president of the International Mercantile Marine, and William L. Walther, first vice president of Funch, Edye & Co., testified that on March 1, 1913, the good will was worth $150,000, but their estimates were based upon hypothetical questions which assumed net earnings as above, in which no allowance had been made for return upon capital employed, or for the use

of tangibles in the business, or for the value of the services of the partners. Mr. Thomas said that he was unable to segregate the value Mr. Sanderson would have had in the enterprise apart from his organization. Mr. Walther said that he estimated the value of the good will without regard to tangibles or working capital, and the hypothetical question put to him took no account of these factors or of the value of the service of the partners. The neglect to regard these items constituted an infirmity in the basis upon which each witness founded his opinion.

There is no doubt that the expert testimony as to the value of the good will was from witnesses of character and long experience and that the business was an old one of the highest standing. Yet it is hard to see how any one without further data can say what part of the earnings was attributable to the capital, tangible property, and skilled labor of the partners, or whether these items would not exhaust the net earnings shown above. Had the business been conducted by a corporation, the salaries of Sanderson and Pentz would unquestionably have been deducted in order to discover what part of the earnings was to be considered attributable to good will. We can see no reason why the same thing should not be done in case of a partnership, though the partners took their pay for their work out of the profits of the firm rather than in corporate salaries.

While there may be reason to suspect that the business had a good will of some value in 1913, we not only do not know the value of the tangibles and the capital employed, but we cannot say from any information available that fair compensation for the services of the partners would not exhaust all the net earnings proved. It may be added in this connection that Lloyd B. Sanderson and Pentz appear to have been the partners on March 1, 1913, but there is evidence that there were other partners prior to that time, and there is nothing in the record to show who were the partners during the prior four years or what was the extent of their activities or the value of their services.

The burden was upon the petitioners to prove that the deficiency tax was erroneously determined and to show the facts establishing the invalidity of the assessment. United States v. Anderson, 269 U. S. at page 443, 46 S. Ct. 131, 70 L. Ed. 347; Reinecke v. Spalding, 280 U. S. at page 233, 50 S. Ct. 96, 74 L. Ed. 385. This burden, in our opinion, they did not sustain.

Order affirmed.