164 N.J. Super. 542 (1978)
397 A.2d 374
ANCY LEVY, PLAINTIFF,
v.
IRA LEVY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided December 6, 1978.
*544 Mr. Irving J. Soloway for plaintiff.
Mr. Michael M. Rosenbaum for defendant (Messrs. Budd, Larner, Kent, Picillo & Rosenbaum, attorneys).
O'NEIL, J.C.C. (temporarily assigned).
When a going business enterprise is being appraised in marital litigation to determine the appropriate equitable distribution, an issue arises whether there is an intangible asset of good will to be evaluated. However, in recent marital litigation instances have multiplied where witnesses appearing to have expertise project widely differing values, based on differing theories of the nature of good will or at times without any theoretical justification at all. The attempts in the present case to assign or deny value to any element of good will in defendant-husband's law practice suggest again the need to begin some public review of the available precedents dealing with good will so as to develop some current judicial consensus on the point. The other issues in the case have no precedential significance.
The husband was admitted to the New Jersey bar in 1953 before the parties' marriage in 1956. He was then and continues to be a single practitioner, specializing in federal tax matters. Until quite recently he employed only clerical *545 help, but in the last year he has engaged an associate and incorporated as a professional association.
The parties separated in 1972 and the wife's divorce complaint was filed in 1974. After a trial involving 11 different days judgment of divorce was entered in May 1977 on the eve of the trial judge's retirement. The judgment also adjudicated an appropriate distribution of the real estate and most of the personal property owned by the parties, using 1976 values. However, it reserved for further attention and later decision the value of the husband's law practice and the appropriate distribution to be made respecting it. Prior to the judgment defendant had testified to the financial details of his practice and the manner in which he billed and collected, but contended that there was no good will to the practice. An accountant testified for the wife from records of the practice he had examined. Although the trial judge's letter opinion observes that "some of his testimony was based on conjecture, some on assumption," the accountant opined that there was a good will factor in the law practice equal to one to one and a half times the gross annual earnings, an opinion, as the trial court noted, for which no authority was given in support. Because he found that he could not accept either side's opinion on the value of the practice, the trial judge appointed an experienced attorney with a specialization in tax matters as the court's expert to review the practice and report on its value. However, in his letter opinion the judge expressed his own view that defendant had "after all these years only a fair law practice." The record of the net income of the practice as shown on Schedule C of his personal income tax returns supports that impression:

 1976 ........................... $35,621
 1975 ........................... $37,240
 1974 ........................... $39,261
 1973 ........................... $40,754
 1972 ........................... $53,277
 1971 (rounded) ................. $43,000

*546 The report of the expert was submitted thereafter and recommended values for the husband's accounts receivable and physical office equipment. As to good will he said this:
The certified public accountant attempted to place a good will value on the law practice. He based his opinion in this regard on practices followed in the accounting profession. I disagree. The courts of this state have consistently held that under the circumstances existing in this case, there would be no good will value to the law practice. It would be otherwise if defendant were a partner in a law firm. This is however not the case herein.
There has yet to be a published holding in a New Jersey marital litigation which distinguishes between a proprietorship and a partnership as to the elements of a business which should be appraised. On the other hand, the Appellate Division has twice effectively generalized that differences of form do not produce different valuation techniques. Scherzer v. Scherzer, 136 N.J. Super. 397 (1975); Grayer v. Grayer, 147 N.J. Super. 513 (1977):
We are satisfied that the manner of valuation of a law practice is not dependent upon its form and hence that the same principles and techniques of valuation apply whether the practice is conducted as a partnership or as a professional corporation. [147 N.J. Super. at 520]
* * * So far as the equitable distribution principle is concerned, there should be no essential difference between a situation in which the husband has an interest in an individual business and one held in a corporate name. The form should not control. [136 N.J. Super. at 400]
Since Grayer held the same appraisal techniques appropriate for a partnership and a corporation and Scherzer held those for a corporation to be applicable to a proprietorship, the mathematical axiom that things equal to the same thing are equal to each other should equate and not differentiate the techniques applicable to a partnership and proprietorship. The significant element of both decisions was that form should not control, although it is possible that formal differences *547 could be accompanied by practical factual differences in result.
Additionally, Stern v. Stern, 66 N.J. 340 (1975), has made it clear that the ethical nonsaleability of a law practice does not necessarily eliminate good will as an element of value:
The good will of a law firm, for ethical reasons, may not be sold or transferred for a valuable consideration. [Citations omitted.] It may, however, in a given case, be possible to prove that it does exist and is a real element of economic worth. Concededly, determining its value presents difficulties. Rev. Rul. 609, 1968-2 Cum. Bull. 327. [at 346, 347, n. 5]
The suggestion of plaintiff's accountant that good will be measured in terms of a multiple of revenues follows a familiar mechanical technique for measuring good will, but his intention to use the gross earnings of the business ignores the reality that, analytically, good will is found in measuring neither the gross nor unadjusted net income of the business, but rather its excess net earnings. In an enterprise where earnings are principally the product of invested capital the question of whether they are excess requires comparison of the rate of return on its own capital with the average or ordinary rate of return being realized in other businesses of the same type. Where the business is a service organization then the question of excess requires comparison of the net earnings with the reasonable value of the personal services which produced them. In either case testimony is needed.
These principles are neither arcane nor exotic, and the process of evaluating good will is not a newly devised exercise. Outside the judicial process it is a commonplace in negotiating sales of businesses. There, the parties' views of the value of good will normally account for the difference between the total value of the tangible assets (including receivables) and the sales price. Until it became relevant to marital litigation after the 1971 amendments, the principal *548 need for judicial attention to it in commonlaw states or in federal courts had arisen in the review of inheritance, estate or income tax assessments.
However, California has long dealt with the issue in applying its community property law to the consequences of divorce, and many decisions there and in other community property states are cited, quoted and digested in a comprehensive law review note, "Valuation of Professional Good Will Upon Marital Dissolution", 7 SW. U.L. Rev. 186 (1975). According to the notewriter, the first case in California to recognize good will as an element attached to a nonmercantile enterprise was Mueller v. Mueller, 144 Cal. App.2d 245, 301 P.2d 90 (D. Ct. App., 1956), which found measurable good will in a dentist's individual practice. It cited and quoted 24 Am. Jur. 808, which, after noting an earlier tendency attributed to Lord Eldon, to deny its existence except in commercial situations said:
* * * The better doctrine, however, appears to be that good will also exists in a professional practice or in a business which is founded upon personal skill or reputation. Where a person acquires a reputation for skill and learning in a particular profession, as, for instance, in that of a lawyer, a physician, or an editor, he often creates an intangible but valuable property by winning the confidence of his patrons and securing immunity from successful competition for their business, and it would seem to be well settled that this is a species of good will which may be the subject of transfer. [301 P.2d at 94]
More recent cases from that region which agree with this concept are In re Marriage of Foster, 42 Cal. App.3d 577, 117 Cal. Rptr. 49 (D. Ct. App. 1974), concerning a medical practice, and In re Marriage of R.M. Lukens, 16 Wash. App. 481, 558 P.2d 279 (App. Ct. 1976), dealing with an osteopath. In re Marriage of Lopez, 38 Cal. App.3d 93, 113 Cal. Rptr. 58 (D. Ct. App. 1964), concerning a law practice, points to the distinction between the extinction of good will upon termination of a practice and its continuance as a productive asset in the case of marriage dissolution. It *549 quotes Golden v. Golden, 270 Cal. App.2d 401, 405, 75 Cal. Rptr. 735, 737 (D. Ct. App. 1969):
* * * But, in a matrimonial matter, the practice of the sole practitioner husband will continue with the same intangible value as it had during the marriage. Under principles of community property law, the wife, by virtue of her position of wife made to that value the same contribution as does a wife to any of her husband's earnings and accumulations during marriage. [38 Cal. App.3d at 107; 113 Cal. Rptr. at 67]
The usual classic definition of good will is that of Mr. Justice Story, cited in In re Ball's Estate, 161 App. Div. 79, 146 N.Y.S. 499 (App. Div. 1914):
Good will may be properly enough described to be the advantage or benefit which is acquired by an establishment beyond the mere value of the capital, stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers, on account of its local position or common celebrity, or reputation for skill or affluence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices. Story on Partnership (7th Ed.), Sec. 99. [161 App. Div. at 79, 146 N.Y.S. at 501]
At issue in the New York case was the value of the good will of Best & Co., the successful retail specialty store in New York whose good will (as well as its Lilliputian Bazaar trademark) had been owned by Thomas Ball personally at his death after earlier transfer of the store's tangible assets to a partnership made up of his two sons and himself. It reviewed on appeal a Surrogate's Court estate tax determination of a value for the good will. After noticing the number of cases in which several years' purchase based on the average net profits had been used, it first observed, as so many other cases do, that the decision as to the number of years purchase "is not a question of law, but one of fact" (146 N.Y.S. at 502), and then expressly recognized that net profits are attributable to more than good will:
*550 Three factors may be said to enter into net profits: First, interest on the capital; second, personal services of the party; and, third, the reputation or good will of the concern. [146 N.Y.S. at 503]
The decision deducted from the average net profits 6% annual return on the invested capital and $30,000 annual salary as the value of decedent's personal services. The balance of the average net earnings was found to be attributable to good will, which was then valued by the application of an appropriate number of years' purchase.
In a New Jersey inheritance tax proceeding early in the century the same conventional view is exhibited both of the concept of good will and the approach to its appraisal. In re Hall, 94 N.J. Eq. 398 (Prerog. 1923), mod. 99 N.J.L. 1 (Sup. Ct. 1923), aff'd 100 N.J.L. 405 (E. & A. 1924). Vice-Ordinary Buchanan at the trial level made these comments on the assessment of good will:
* * * The value of the good-will of a business is naturally not susceptible of determination with exactitude. The usual method is to take the actual annual net profits of the business for a period of years, add them and divide by the number of years, thus obtaining the average annual net profit, and then to multiply that average profit by a certain number of years. This last multiplier is called the "number of years purchase" and varies, of course, with the particular circumstances in each case. In some instances two years has been taken, in others, three, four and five. Three years purchase seems fairly well accepted as a reasonable and conservative figure in ordinary cases. Cf. In re Ball, 161 App. Div. 79, 146 N.Y.S. 499.
In the case sub judice the comptroller computed the average annual net profit from the net profits of the years 1916, 1917 and 1918, first deducting, however, six per cent. interest on the respective amounts of invested capital in those years, and took a "three years purchase", that is, multiplied the net average annual profit by 3, and took that as the value of the goodwill. [94 N.J. Eq. at 407, 408; emphasis supplied]
These same concepts are formulated in the 1968 Revenue Ruling cited by our Supreme Court in Stern v. Stern, supra. The ruling reviewed and updated prior rulings on the calculation *551 of good will which it referred to as "the intangible assets of the business":
The question presented is whether the "formula" approach, the capitalization of earnings in excess of a fair rate of return on net tangible assets, may be used to determine the fair market value of the intangible assets of a business.
The "formula" approach may be stated as follows:
A percentage return on the average annual value of the tangible assets used in a business is determined, using a period of years (preferably not less than five) immediately prior to the valuation date. The amount of the percentage return on tangible assets, thus determined, is deducted from the average earnings of the business for such period and the remainder, if any, is considered to be the amount of the average annual earnings from the intangible assets of the business for the period. This amount (considered as the average annual earnings from intangibles), capitalized at a percentage of, say, 15 to 20 percent, is the value of the intangible assets of the business determined under the "formula" approach.
The percentage of return on the average annual value of the tangible assets used should be the percentage prevailing in the industry involved at the date of valuation, or (when the industry percentage is not available) a percentage of 8 to 10 percent may be used.
The 8 percent rate of return and the 15 percent rate of capitalization are applied to tangibles and intangibles, respectively, of businesses with a small risk factor and stable and regular earnings; the 10 percent rate of return and 20 percent rate of capitalization are applied to businesses in which the hazards of business are relatively high.
The above rates are used as examples and are not appropriate in all cases. In applying the "formula" approach, the average earnings period and the capitalization rates are dependent upon the facts pertinent thereto in each case.
The past earnings to which the formula is applied should fairly reflect the probable future earnings. Ordinarily, the period should not be less than five years, and abnormal years, whether above or below the average, should be eliminated. If the business is a sole proprietorship or partnership, there should be deducted from the earnings of the business a reasonable amount for services performed by the owner or partners engaged in the business. See Lloyd R. Sanderson Estate v. Commissioner [2 Cir.], 42 F.2d 160 (1930). Further, only the tangible assets entering into net worth, including accounts and bills receivable in excess of accounts and bills payable, *552 are used for determining earnings on the tangible assets. Factors that influence the capitalization rate include (1) the nature of the business, (2) the risk involved, and (3) the stability or irregularity of earnings.
The "formula" approach should not be used if there is better evidence available from which the value of intangibles can be determined. If the assets of a going business are sold upon the basis of a rate of capitalization that can be substantiated as being realistic, though it is not within the range of figures indicated here as the ones ordinarily to be adopted, the same rate of capitalization should be used in determining the value of intangibles.
Accordingly, the "formula" approach may be used for determining the fair market value of intangible assets of a business only if there is no better bases therefor available. (Rev. Rul. 68-609, C.B. 1968-2, p. 327 to 328).
The case cited in the Revenue Ruling produced an opinion by Judge Augusts N. Hand which demonstrates that 50 years ago, as now, some professional witnesses tended toward broad-brush appraisals of good will based upon multiples of the net earnings without reduction for the appropriate return on capital or the value of personal services involved in producing the earnings and found this not to be a proper approach.
An issue in the case was the 1913 value, if any, of good will of a business in which the taxpayer's interest was sold in 1921. The Internal Revenue Service had found that there was no good will on March 1, 1913, and accordingly assessed the whole purchase price as gain. The Second Circuit affirmed because of the taxpayer's failure on appeal to carry the burden of proving a valid basis for the good will. He had presented evidence of the average earnings of the partnership for 16 years prior to the enactment of the Income Tax Act and had factored the relevant recent average earnings on the apparent assumption of a five-year purchase multiplier applied to average annual earnings of about $33,000. However, as the court noted, "these figures involved no deduction for interest on any capital employed or for the services of the partners." Sanderson v. Internal Revenue Comm'r, 42 F.2d 160 (2 Cir.1930).
*553 Pinpointing the inadequacy of the witnesses' testimony, the court stated that
* * * their estimates were based upon hypothetical questions which assumed net earnings as above, in which no allowance had been made for return upon capital employed, or for the use of tangibles in the business, or for the value of the services of the partners. * * * The neglect to regard these items constituted an infirmity in the basis upon which each witness founded his opinion. [at 160 and 161]
A further comment of the court indicates the same view of nondifferentiation in valuation techniques between proprietorships and partnerships on the one hand and corporations on the other as that which has been expressed locally in the recent New Jersey cases cited above:
* * * Yet it is hard to see how any one without further data can say what part of the earnings were attributable to the capital, tangible property, and skilled labor of the partners, or whether these items would not exhaust the net earnings shown above. Had the business been conducted by a corporation, the salaries of Sanderson and Pentz would unquestionably have been deducted in order to discover what part of the earnings was to be considered attributable to good will. We can see no reason why the same thing should not be done in case of a partnership, though the partners took their pay for their work out of the profits of the firm rather than in corporate salaries. [at 161]
Collectively, the foregoing authorities support the proposition that determination of good will is a question of fact and not of law; expert opinion on the subject is helpful, but like any other evidence, not conclusively binding upon the tryer of the fact; what is being measured in the final analysis are those "excess earnings" of an enterprise which are properly attributable to its good will, and they are to be derived by deducting from the properly determined average earnings whatever reasonable amounts are appropriate to compensate for a proper return on the capital or the reasonable value of the personal services or both, to the extent that either enters into the production of the income of *554 the enterprise. What is being measured is in reality the capacity of repeat patronage and of a certain immunity to competition to produce earnings beyond the average for that kind of business. Hence, the multiple to be applied by way of "number of years purchase" will vary inversely with the amount and intensity of competitiveness in the line of business being appraised.
One of the California opinions, In re Marriage of Lopez, supra, makes an important observation soliciting judicial caution in the inspection of evidence on good will and in the decision on its value. The emphasis is that of the California court:
While "market value" and the value for marital dissolution purposes of "professional goodwill" may be synonymous, in our view such value should be determined with considerable care and caution, since it is a unique situation in which the continuing practitioner is judicially forced to buy an intangible asset at a judicially determined value and compelled to pay a former spouse her share in tangible assets. [38 Cal. App.3d at 108, 113 Cal. Rptr. at 68]
Applying the foregoing principles to the present case, the first question is, "Are there excess earnings?"
The net income for the six years stated above averages $41,500 a year. If the highest year, 1972, which was significantly better than any of the others is eliminated, as suggested by the Revenue Ruling, supra, then the average of earnings for the other five years amounts to just over $39,000. Given defendant's experience over 20 years in a specialized tax-oriented practice and accepting the judgment expressed in the original trial judge's letter opinion that defendant is "a bright lawyer," one tends to agree with his opinion previously noted that the practice is only "fair." This opinion, if it be valid, negates any concept of excess earnings. It suggests that were defendant to be employed either by a large law firm or a corporation to perform the same kind of services which he renders individually to his clients, the value of his personal services as measured by the salary *555 which he could command would not be less than the average earnings of his practice, whichever of the above computations is used. For good will to be found in a case of this sort, competent, informed and expert testimony should be offered to establish that the value of the personal services is less than the net income of the practice. The difference would then be what the Revenue Ruling refers to as the earnings of the "intangible" asset of good will. I believe that it is impossible to get such testimony in the present case. Certainly there was none.
Accordingly, it is found that in appraising the defendant's practice there is no good will to be included as an asset in determining its value.