540 A.2d 833

**Leo PRAHINSKI**

v.

**Margaret E. PRAHINSKI.**

**No. 1187, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

May 6, 1988.

Certiorari Granted Sept. 2, 1988.

---

**12.** Appellants do not claim that *mailing* the notice of rejection satisfies § 3–2A–06(a) and thus we do not address that issue.

Cheryl Lynn Hepfer (Meehan, Kovach and Hepfer, P.A., on the brief), Upper Marlboro, for appellant.

Marvin E. Perlis, Silver Spring, for appellee.

Argued before MOYLAN, BLOOM and POLLITT, JJ.

BLOOM, Judge.

Leo Prahinski appeals from a judgment of the Circuit Court for Prince George's County severing the bonds of matrimony between him and appellee, Margaret Prahinski. Although the divorce aspect of the case was uncontested, appellant is aggrieved by those portions of the judgment that distributed certain marital property between the parties and granted a substantial monetary award in addition to indefinite alimony. Specifically, appellant contends:

1. The trial court erred in its valuation of the appellant's business.

2. The trial court erred in awarding indefinite alimony to appellee and in making that award the trial court failed to consider the required statutory factors.

3. The trial court erred in requiring that alimony payments begin after the payment of a monetary award representing the business value; and

4. The trial court erred in the distribution of marital assets and likewise failed to consider the required statutory factors.

In her brief, appellee presents us with a fifth issue. But since she failed to file a cross-appeal pursuant to Md. Rule 1012g, she may not raise this issue on appeal. *See, Joseph H. Munson Co. v. Sec. of State,* 294 Md. 160, 168, 448 A.2d 935 (1982), *aff'd,* 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984). Consequently, we will address only those issues that were presented by appellant.

## Background

The parties met as college students at the University of Maryland. They were married in 1965, at which time appel-

lee, who had completed her freshman year, decided to discontinue her education in order to maintain the family home and, eventually, to raise the parties' two children.[1] Appellant completed his undergraduate studies and continued his education in law school. In 1971, appellant started his own law practice. Appellee worked with appellant in that practice; she was, as appellant acknowledged, legal secretary, office manager, and a "Gal Friday, doing anything and everything necessary. She was very helpful." Initially, appellant's practice was varied in that he handled negligence cases, estate and will work, some collection work, and domestic relations cases. As appellant testified, he "was dying for [the] Lawyer Referral Service to call with cases."

In 1974, appellant handled his first real estate settlement; by 1977 or 1978 real estate settlement work became a major portion of his practice. As that aspect of the practice grew, appellee's involvement in the practice also grew. Appellant testified that at the time of the trial his practice was probably 95 to 97% settlement work with the remaining percentage being wills work and the giving of legal advice to clients on a variety of matters.

In 1983, appellant became involved with another woman. The parties separated in March 1984. Appellee continued to work for appellant at his law office until October 1986, at which time appellant insisted that she leave the office because of the pending divorce litigation. During the separation, appellee remained in the family home while appellant resided in a house in Montgomery County.

Appellee filed for divorce on November 14, 1986. Hearings were held on July 1, 2, and 6, 1987. At the conclusion of the July 6 hearing, the court granted the parties an absolute divorce, holding the property disposition, monetary award, and alimony issues under advisement. By written order dated July 7, 1987, and filed July 10, 1987, the court

---

1. At the time of the divorce, the children were emancipated and thus no child custody issues were presented.

incorporated its oral order of absolute divorce, provided for the distribution of marital assets, and granted a monetary award and indefinite alimony. It is from that order that this appeal was taken.

### Business Evaluation

A major issue in this case is the evaluation of the husband's business. The court found it to be worth $300,000, which consisted entirely of goodwill since the tangible physical assets were worth less than the liens thereon and the business bank accounts were separately valued. The court granted appellee a monetary award of $150,000, specifically designated as one-half of the value of the business, payable, with interest, at the rate of $3,000 per month. Appellant's first, and principal, argument on appeal is that the evaluation and, therefore, the monetary award based thereon are erroneous.

The threshold consideration of the business evaluation issue is what is the nature of appellant's business. Appellant contends that his business is a law practice that specializes in real estate settlements; appellee contends that it is a title business. The trial court, agreeing with appellee, found appellant's business to be a title business and not a law practice, and valued it as such. We believe that finding to be clearly erroneous. Md. Rule 1086. On the basis of the evidence presented, appellant's business is unquestionably a law practice and not a title company.

A law practice specializing in real estate transactions and a title business are essentially similar in the functions they perform and the services they provide. Both examine land records and approve titles to real estate; both prepare deeds, mortgages and other documents deemed necessary or appropriate to effectuate transfers of title to realty and the securing of liens thereon; both conduct settlements and collect and disburse funds in connection with sales and mortgages of real estate; both either issue to, or obtain for, the purchaser or mortgagee title insurance. An attorney

may conduct such business in his own name, as an attorney, or he may opt to do so as, and under the name of, a title company. A title company need not be owned by an attorney, but a title company may need to have an attorney on its staff or be associated with one, since, in certain Maryland counties, a deed, mortgage, or deed of trust cannot be recorded "unless it bears a certification that the instrument has been prepared by an attorney admitted to practice before the Court of Appeals, under his supervision, or by or on behalf of one of the parties named in the instrument." *See,* Md. Real Prop.Code Ann. § 3–104(f) (1988 Repl.Vol.). Whether operated as a law practice or title company, it would appear that the real estate settlement business can produce substantial income.[2]

Despite the similarities, the practice of law, even one dedicated almost exclusively to real estate transactions, is not merely the operation of a title company, and a title company is not a law practice. The difference is not so much in the nature of the "finished product"—an insured title or mortgage—delivered to the client, but in the nature of the responsibility assumed by the provider, particularly in the eyes of the client. The client of the title company may expect no more than the finished product; the client of the attorney has every reason to expect and rely upon the attorney's professional expertise, advice and counsel in addition to the product he could obtain from a title company. The difference may be largely in the perception of the client, but it is that perception, and the professional reputation attached thereto, that would cause the client to choose an attorney rather than a title company to provide the service.

In the case *sub judice,* when appellant began his law practice in 1971, he held himself out to the public, as he continues to do, as "Leo F.X. Prahinski, Attorney at Law."

---

**2.** In 1986, when refinancing of home mortgages became attractive as the result of falling interest rates, appellant earned over $200,000 in settlement work.

According to his testimony, as his skills in conducting settlements grew realtors began to return to him for settlements. When asked why realtors returned, appellant testified that "they can count on me to help if a problem comes up in getting a case settled, and they bring [cases] to my office because they know [the transactions] will settle." Appellant further testified that he often gave legal advice at settlements and explained each party's obligation under the contracts and the law. Finally, appellant testified that he frequently gave legal advice to people, drafted wills, answered legal questions, occasionally handled a negligence case, and handled legal matters relating to real estate other than settlements. None of this evidence was contradicted; to a large extent it was corroborated.

■ Appellee relies heavily on the fact that much of the work done at the business was done by appellant's staff [3] rather than by appellant. That is not unusual in law practices, in many of which non-lawyers—student law clerks, paralegals, and secretaries—do much of the research and clerical work, which the attorney reviews and then adds his professional imprimatur to create a legal end product. According to the evidence, that is precisely what occurred in appellant's office. Appellant's staff did clerical work and initial research. Appellant, applying his professional judgment, would then review their work, conduct the settlement, and certify the settlement forms, pursuant to Md. Real Prop.Code Ann., § 3–104(f), thereby taking full professional responsibility for the work done by his staff as well as by himself.

■ The only evidence to the effect that appellant's business was a title business rather than a law practice

---

3. The fact that appellant had non-lawyers working for him did not transform his business from that of a law practice to a title business. Rule 5.3 of the Maryland Rules of Professional Conduct, permits non-lawyer assistants so long as the lawyer maintains proper supervision over the non-lawyer assistants. *See* 306 Md. LXXVII for the text of Rule 5.3. In the case *sub judice* there is no indication that appellant did not practice in accordance with Rule 5.3.

came from appellee's expert witness. That witness, a certified public accountant, was accepted by the court as an expert in the field of accounting and appraising service businesses. The witness's expertise did not, however, include the classification of businesses. And since a title business and a law practice are both service businesses, with considerable similarity between them, the expert's testimony that appellant's business was a title and escrow business should be scrutinized carefully. In one sense, the witness was correct; the bulk of appellant's business or practice resembled that of a title business with an in-house counsel. But the witness's opinion that he was valuing a title company ignores the fact that appellant rendered legal advice on matters other than real estate settlements and held himself out to the public as an attorney, not as a title company. To a large extent, the witness's opinion that appellant's business was not the practice of law was based upon his own admittedly limited experience in attending real estate settlements, at which, he claimed, he never heard legal advice asked for or given. All of the other evidence being entirely to the contrary, the testimony of appellee's expert witness that appellant's practice was a title company business cannot make it so. As we recently noted in *Ziegler v. Kawasaki Heavy Industries, Ltd.*, 74 Md.App. 613, 539 A.2d 701 (1988), quoting *Bernstein v. Reforzo*, 37 Md.App. 724, 732, 379 A.2d 181 (1977), *cert. granted*, 282 Md. 738 (1978), *appeal dismissed*, May 18, 1978, an expert opinion has "no greater value than the facts on which it is based." Slip op. at 18. In this case it has no value at all, since the facts upon which the opinion was based simply do not support the opinion, and the witness lacked the expertise adequately to evaluate those facts. The court should not have accepted the witness's opinion as to the nature of appellant's practice; in so doing it made a factual finding that was clearly erroneous. Md. Rule 1086.

Having held that the expert witness wrongly characterized appellant's practice as a title company, we turn now to the valuation of that practice.

A law practice, like a title company, is a service business; and whatever classification he assigned to it, appellee's expert was valuing a service business, a subject on which he did qualify as an expert.

Appellant testified that the law practice had tangible assets of $11,000, but was burdened by $13,000 in liabilities. This evidence was not controverted, and appellee's expert conceded that the law practice had no "tangible assets entering into [the] net worth" of appellant's practice. Nevertheless, the expert placed a value of $450,000 on the business, which the court, for some unexplained reason, reduced to $300,000, on the basis of which it granted appellee a monetary award of $150,000.

There being no tangible assets, the expert's evaluation and the court's finding of value were based entirely on an intangible asset, "goodwill." Appellant contends that goodwill is not marital property. In the alternative, he contends that if goodwill is marital property, then it was improperly valued in the instant case. Before considering appellant's contentions, we shall examine the nature of goodwill.

Goodwill is an intangible property asset commonly defined as:

> [T]he advantage or benefit, which is acquired by an establishment, beyond the mere value of the capital, stock, funds, or property employed therein, in consequence of the general public patronage and encouragement, which it receives from constant or habitual customers, on account of its local position, or common celebrity, or reputation for skill or affluence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices.

J. Story, *Commentaries on the Law of Partnership as a Branch of Commercial and Maritime Jurisprudence*, § 99, at 139 (Boston 1841). The Court of Appeals recognized this definition in *Brown v. Benzinger*, 118 Md. 29, 35, 84 A. 79 (1912). In *Hagan v. Dundore*, 187 Md. 430, 442, 50 A.2d 570 (1947), the Court of Appeals noted that "goodwill"

had been variously defined, from Lord Eldon's terse definition of "the probability that the old customers will resort to the old place," *Cruttwell v. Lye*, 17 Ves.Jr. 335, 346, 34 Eng.Rep. 129, 134 (ch. 1810), to "the goodwill of a business comprises those advantages which may inure to the purchaser from holding himself out to the public as succeeding to an enterprise which has been identified in the past with the name and repute of his predecessor." *Knoedler v. Boussod*, 47 F. 465, 466 (S.D.N.Y.1891), *aff'd.*, 55 F. 895 (2nd Cir.1893).

The preceding characterizations of goodwill raise the question of when is goodwill, specifically professional goodwill, an asset with value and therefore property to be included in an equitable distribution pursuant to Md. Fam.Law Code Ann. § 8–201 *et seq. See also, Archer v. Archer*, 303 Md. 347, 493 A.2d 1074 (1985) (only items imbued with the traditional indicia of "property," *i.e.*, transferable, assignable, devisable, subject to conveyance, sale, pledge or inheritance, are proper subjects of equitable distribution). The key issue as to the professional goodwill of a sole proprietorship, as in the case *sub judice*, has to do with the value, if any, which can be attributed to it, causing it to be subject to equitable distribution.

Whether professional goodwill can be marital property susceptible to valuation and distribution as such has been the subject of many articles. *See, e.g.*, Parkman, *The Treatment of Professional Goodwill in Divorce Proceedings*, 18 Fam.L.Q. 213 (1984); Family Law Comment, *The Recognition and Valuation of Professional Goodwill in the Marital Estate*, 66 Marg.L.Rev. 697 (1983); Note, *Treating Professional Goodwill As Marital Property in Equitable Distribution States*, 58 N.Y.U.L.Rev. 554 (1983); Foster, *Equitable Distribution of Professional Degrees, Licenses and Goodwill*, 1 Fairshare 9 (Jan.1983); Raggio, *Professional Goodwill and Professional Licenses as Property Subject to Distribution Upon Dissolution of Marriage*, 16 Fam.L.Q. 147 (1982); Kennedy & Thomas, *Putting A Value on: Education and Goodwill*, 2 Fam.Advoc. 3

(1979); Lurvey, *Professional Goodwill on Marital Dissolution: Is It Property or Another Name for Alimony?*, 52 Cal.St.B.J. 27 (1977). *See also, Accountability for Goodwill of Professional Practice in Actions Arising from Divorce or Separation*, 52 A.L.R.3d 1344 (1973). The courts have been as active as the commentators in addressing the question of professional goodwill in an equitable distribution. *See, e.g., Wilson v. Wilson*, 294 Ark. 194, 741 S.W.2d 640 (1987); *Wisner v. Wisner*, 129 Ariz. 333, 631 P.2d 115 (Ct.App.1981), *harmonized, Mitchell v. Mitchell*, 152 Ariz. 317, 732 P.2d 208 (1987) (*en banc*); *In re Marriage of Foster*, 42 Cal.App.3d 577, 117 Cal.Rptr. 49 (1974); *In re Marriage of Nichols*, 43 Colo.App. 383, 606 P.2d 1314 (1979); *In re Marriage of White*, 98 Ill.App.3d 380, 53 Ill.Dec. 786, 424 N.E.2d 421 (1981), *appeal after remand*, 151 Ill.App.3d 778, 104 Ill.Dec. 424, 502 N.E.2d 1084 (1986); *Powell v. Powell*, 231 Kan. 456, 648 P.2d 218 (1982); *Heller v. Heller*, 672 S.W.2d 945 (Ky.Ct.App.1984); *In re Marriage of Hull*, 712 P.2d 1317 (Mont.1986); *Taylor v. Taylor*, 222 Neb. 721, 386 N.W.2d 851 (1986); *Hurley v. Hurley*, 94 N.M. 641, 615 P.2d 256 (1980), *limited overruling on other grounds, Ellsworth v. Ellsworth*, 97 N.M. 133, 637 P.2d 564 (1981); *Weaver v. Weaver*, 72 N.C.App. 409, 324 S.E.2d 915 (1985); *Goger v. Goger*, 27 Or.App. 729, 557 P.2d 46 (1976); *Nail v. Nail*, 486 S.W.2d 761 (Tex.1972); *In re Marriage of Fleege*, 91 Wash.2d 324, 588 P.2d 1136 (1979) (*en banc*); *Holbrook v. Holbrook*, 103 Wis.2d 327, 309 N.W.2d 343 (1981). The specific issue of the professional goodwill of an attorney's practice in a divorce situation has also been addressed by some courts. *See, e.g., In re Marriage of Fenton*, 134 Cal.App.3d 451, 184 Cal.Rptr. 597 (1982); *Dugan v. Dugan*, 92 N.J. 423, 457 A.2d 1 (1983) (goodwill of a law practice is subject to distribution); *Beasley v. Beasley*, 359 Pa.Super. 20, 518 A.2d 545 (1986), *allocatur denied*, 516 Pa. 631, 533 A.2d 90 (1987) (professional goodwill of a law practice operated as a sole proprietorship is not marital property). Since Maryland has not heretofore addressed the question of professional goodwill relative to an eq-

uitable distribution, we deem it appropriate to examine the cases from our sister states and analyze how they have handled this question. Before we do so, however, we should consider whether the fact that appellant's business is a law practice affects the determination of its goodwill value for purposes of equitable distribution.

In *Archer v. Archer, supra,* the Court of Appeals held that a medical degree or license was not marital property, but merely reflected the possibility of future earnings. 303 Md. at 357, 493 A.2d 1074. The *Archer* rationale, of course, is equally applicable to a law degree and a license to practice law. Insofar as such degrees and licenses reflect future earnings, they should be treated as considerations affecting alimony and not as marital property. *See, Archer v. Archer,* 303 Md. at 359, 493 A.2d 1074. Nevertheless, when the opportunity provided by the license or degree is exercised, goodwill *may* come into existence, and if it does, it should be differentiated from earning capacity. True goodwill reflects not simply a *possibility* of future earnings, but a *probability* based on existing circumstances. That is what distinguishes it from the professional license or degree, to which is attached a mere prospect of enhanced future earnings that are too remote and speculative for the degree or license itself to be deemed property. *Archer,* 303 Md. at 357, 493 A.2d 1074. Unlike the license and the degree, goodwill is a marketable and transferable asset. *See Dugan v. Dugan, supra,* 457 A.2d at 6.

There may be some degree of likelihood that goodwill exists as a valuable asset of a law firm; it is doubtful that the practice of a sole practitioner enjoys any marketable goodwill. A principal attribute of goodwill of any business, trade, or profession is its firm or trade name. There are law firms bearing the names of long deceased partners.[4]

---

4. The Comment to Rule 7.5 of the Maryland Rules of Professional Conduct states that: "A firm may be designated by the names of all or some of its members, *by the names of deceased* or retired members where there has been a continuing succession in the firm's identity or

Presumably, the right to use the firm name, which is a major part of the goodwill of the firm, is a valuable asset. But the sole practitioner, practicing under his own name, as is the case with appellant here, does not have a trade name that is transferable. No one but appellant can practice law under the name "Leo F.X. Prahinski, Attorney-at-law." His trade name is not a saleable, transferable commodity.

■ After a divorce, a lawyer's law practice will continue to benefit from whatever goodwill it may have had during the marriage. If, in fact, goodwill exists, it would be inequitable to ignore the contribution of the attorney's spouse to the development of that goodwill during the marriage. If it does exist, therefore, goodwill is an asset to be valued and considered in equitable distribution. Obviously, equitable distribution does not require that all property be part of some monetary award, but the attorney's spouse is entitled to have *true* goodwill, as distinguished from future earnings, considered as any other property acquired during the marriage. Accordingly, a number of jurisdictions have held that professional goodwill is property subject to distribution. *See, e.g., In re Marriage of Lopez,* 38 Cal.App.3d 93, 113 Cal.Rptr. 58 (1974); *Dugan v. Dugan,* 92 N.J. 423, 457 A.2d 1 (1983); *In re Marriage of Kaplan,* 23 Wash.App. 503, 597 P.2d 439 (1979).

There is considerable doubt, based on ethical considerations, that the goodwill of a law practice can be sold or transferred. *See,* Maryland State Bar Assoc., Inc. Committee on Ethics, Opinion 81–55 (1981) (citing *Validity of Contract for Sale of "Goodwill" of Law Practice,* 79 A.L.R.3d 1243 (1977)). Even so, such goodwill may be proven to exist and to be a real element of economic worth.

___

by a trade name such as the 'ABC Legal Clinic.'" 13 Md.Reg. 11 (May 23, 1986) (part II) at 45 (emphasis added). *Cf.* 13 Md.Reg. 11 (May 23, 1986) (part II) at 3 (comment by Judge Cole where he stated that he did not concur in the adoption of the emphasized portion of the Comment to Rule 7.5 because of his belief that it is "false and misleading for a firm to state as a part of the firm name the name of a lawyer who has been deceased for a period in excess of five years.")

Its valuation would present difficulty, but the fact that ethically it could not be sold should not necessarily eliminate goodwill as an element of value to be considered by the court in making an equitable distribution. *See, Stein v. Stein,* 66 N.J. 340, 331 A.2d 257 (1975); *Levy v. Levy,* 164 N.J.Super. 542, 397 A.2d 374 (1978). That even true goodwill cannot *ethically* be sold may adversely affect but not necessarily eliminate its value as property, capable of being transferred, devised, or inherited. Therefore, if there is true goodwill in an attorney's practice, separable from his individual future earning capacity, then a value can be placed on it. Whether, in this case, appellant's law practice has true goodwill is the question which we now address.

Essentially, three positions have been taken relative to professional goodwill as marital property. Currently, the majority view is that professional goodwill is a business asset with a determinable value and is thus marital property. *See, e.g., Wisner v. Wisner,* 129 Ariz. 333, 631 P.2d 115 (Ct.App.1981), *harmonized, Mitchell v. Mitchell,* 152 Ariz. 317, 732 P.2d 208 (1987) (*en banc*); *In re Marriage of Foster,* 42 Cal.App.3d 577, 117 Cal.Rptr. 49 (1974); *In re Marriage of Nichols,* 43 Colo.App. 383, 606 P.2d 1314 (1979); *In re Marriage of White,* 98 Ill.App.3d 380, 53 Ill.Dec. 786, 424 N.E.2d 421 (1981), *appeal after remand,* 151 Ill.App.3d 778, 104 Ill.Dec. 424, 502 N.E.2d 1084 (1986); *Heller v. Heller,* 672 S.W.2d 945 (Ky.Ct.App.1984); *In re Marriage of Hull,* 712 P.2d 1317 (Mont.1986); *Dugan v. Dugan,* 92 N.J. 423, 457 A.2d 1 (1983); *Hurley v. Hurley,* 94 N.M. 641, 615 P.2d 256 (1980), *limited overruling on other grounds, Ellsworth v. Ellsworth,* 97 N.M. 133, 637 P.2d 564 (1981); *Weaver v. Weaver,* 72 N.C.App. 409, 324 S.E.2d 915 (1985); *Goger v. Goger,* 27 Or.App. 729, 557 P.2d 46 (1976); *In re Marriage of Fleege,* 91 Wash.2d 324, 588 P.2d 1136 (1979). The Courts that have found such goodwill to be marital property have generally adopted a method of evaluation involving the capitalization of excess earnings. For example, in *Dugan v. Dugan, supra,* the New Jersey

Supreme Court suggested a capitalization of excess earnings method as follows:

1. Ascertain what a professional of comparable experience, expertise, education and age would be earning as an employee in the same general locale;

2. Determine and average the professional's net income before federal and state income taxes for a period of years, preferably five;

3. Compare the actual average with the employee norm; and

4. Multiply the excess by a capitalization factor.

92 N.J. at 439–40, 457 A.2d at 9–10. *See also,* Internal Revenue Service, Rev.Rule. 68–609, 1968—2 C.B. 327. The Internal Revenue Service Rule was the method utilized by appellee's expert witness in the case *sub judice.* He testified that it is the method permitted by the Internal Revenue Service to determine fair market value of intangible assets based upon excess earnings. When only a capitalization of excess earnings method of evaluation is applied to a professional practice, the value determined, characterized as "professional goodwill," represents nothing more than an entity's future earning capacity; it is not necessarily an asset that may be sold, transferred, or assigned. *See Taylor v. Taylor, supra,* 386 N.W.2d at 857–58. The capitalization of excess earnings approach, therefore, according to Professor Parkman, does nothing more than place "a value on an individual's reputation, which is something possessed by everyone." Parkman, *supra,* 18 Fam.L.Q. at 219. Since professional reputation is a factor that affects one's ability to obtain future earnings, it is clearly a relevant factor for alimony. Whether it should be a factor in an equitable distribution is not so clear. To the extent that professional reputation may be deemed to be "uniquely personal to the holder," it would not be marital property. *See Unkle v. Unkle,* 305 Md. 587, 596, 505 A.2d 849 (1986).

Some courts, taking a second approach, have held that professional goodwill is not property and thus cannot be

marital property. *See e.g., Powell v. Powell,* 231 Kan. 456, 648 P.2d 218 (1982); *Beasley v. Beasley,* 359 Pa.Super. 20, 518 A.2d 545, *allocatur denied,* 516 Pa. 631, 533 A.2d 90 (1987); *Nail v. Nail,* 486 S.W.2d 761 (Tex.1972); *Holbrook v. Holbrook,* 103 Wis.2d 327, 309 N.W.2d 343 (1981). Illustrative of the reasoning for this is the Wisconsin Supreme Court's statement that:

> [t]he concept of professional goodwill evanesces when one attempts to distinguish it from future earning capacity. Although a professional business's good reputation, which is essentially what its goodwill consists of, is certainly a thing of value, we do not believe that it bestows on those who have an ownership interest in the business an actual separate property interest. The reputation of a law firm or some other professional business is valuable to its individual owners to the extent that it assures continued substantial earnings in the future. It cannot be separately sold or pledged by the individual owners. The goodwill or reputation of such a business accrues to the benefit of the owners only through increased salary.

103 Wis.2d at 350, 309 N.W.2d at 354. This approach ignores that probability that "goodwill" as a business asset can be separate and distinct from reputation and thus valuable as an intangible property, whereas the first approach blurred the distinction between goodwill and the mere prospect for future earnings.

At least two courts have taken a third approach, somewhat between the two stated above. *See, e.g., Wilson v. Wilson,* 294 Ark. 194, 741 S.W.2d 640 (1987); *Taylor v. Taylor,* 222 Neb. 721, 386 N.W.2d 851 (1986). They have held:

(1) Where goodwill is a marketable business asset distinct from the personal reputation of a particular individual, as is usually the case with many commercial enterprises, that goodwill has an immediately discernible value as an asset of the business and may be identi-

fied as an amount reflected in a sale or transfer of a business.

(2) If the goodwill depends on the continued presence of a particular individual, such good will, by definition, is not a marketable asset distinct from the individual.

*Wilson,* 741 S.W.2d at 647; *Taylor,* 222 Neb. at 731, 386 N.W.2d at 858.

■ We believe this third approach to be a sound one, as it recognizes the difference between true goodwill and an individual's reputation, which may be characterized as the ability to obtain future earnings masquerading as goodwill. This approach also has an advantage of being more flexible than either of the other two. Of the three it is the one most consistent with the holdings that in any calling the existence of goodwill and its value, if any, are questions of fact. *See, Wilson v. Wilson,* 741 S.W.2d at 647; *Taylor v. Taylor, supra,* 386 N.W.2d at 859; *In re Marriage of Foster,* 42 Cal.App.3d 577, 117 Cal.Rptr. 49 (1974); *Levy v. Levy,* 164 N.J.Super. 542, 397 A.2d 374 (1978). *See also,* B. Goldberg, *Valuation of Divorce Assets,* § 8.3 (1984). That is, whether an asset is true goodwill or merely the reputation of an individual enhancing his prospects for future earnings should be determined, on a case by case basis, by the trier of fact.

We shall adopt the view expressed in the third approach as the one that correctly distinguishes true goodwill from personal reputation and recognizes the former as property. Accordingly, we hold that for professional goodwill to be marital property it must be a business asset having a value independent of the continued presence or reputation of any particular individual. That is, it must be shown to be an asset distinct from, and thus not dependent on, the reputation or continued presence of the individual professional.

■ In the case *sub judice,* the appellee did not and could not make such a showing. Appellant is a sole practitioner. Were he to terminate his activity, the lights would go out and the value of his practice would be extinguished.

The practice itself is non-transferable. A lawyer's clients cannot be sold; the right to represent them can only be transferred with their express consent; they have the absolute right to select their own future representation. Aside from the tangible physical property, which in this case is worth less than the liens burdening it, there is nothing of value in appellant's law practice that he can legitimately transfer to a purchaser of his practice. Perhaps because of the nature of appellant's practice, there is no evidence that there are any accounts receivable that might be assigned to a purchaser.

 Appellee's expert witness conceded that his evaluation of the goodwill of appellant's practice or business was based upon the assumption that if appellant were to sell his practice he would have to agree not to compete with the purchaser. When questioned as to whether the absence of such an agreement not to compete would have a dramatic effect on his valuation, the witness acknowledged that it would. The fact that such a non-competition clause was an essential factor in the expert's valuation *sub judice* clearly establishes that what the expert referred to as "goodwill" was in reality the appellant's reputation. The value of the business was entirely dependent either on appellant continuing in the practice or agreeing not to compete if he sold it.[5] Therefore, the goodwill associated with appellant's law practice is of the type entirely dependent upon appellant's reputation and not true goodwill, *i.e.,* an independent asset of the business. It is simply *not* a marketable asset severable from appellant, and the value assigned to this "goodwill" is in reality a calculation of appellant's future earnings. As noted *supra,* the prospect for future earnings is a proper consideration for alimony, *Brodak v. Brodak,* 294 Md. 10, 28, 447 A.2d 847 (1982), but it is not marital property subject to equitable distribution.

---

5. Such a clause in the case of an attorney would not be possible because of ethical considerations. *See,* Maryland Rules of Professional Conduct, Rule 5.6, at 306 Md. LXXIX.

*See, Archer v. Archer,* 303 Md. at 357–59, 493 A.2d 1074. Therefore, the trial court erred in treating appellant's law practice, which had no assets other than its supposed goodwill, as marital property.

We deem it appropriate to emphasize that our decision with respect to goodwill in this case should not be taken as a holding or even an implication that goodwill, as a saleable or marketable asset, may never exist in a professional practice. *See,* Parkman, *supra,* 18 Fam.L.Q. at 215–21. It is difficult to imagine how the law practice of a sole practitioner can enjoy goodwill that is severable from the reputation of the practitioner himself, but if a party were to produce appropriate evidence establishing the salability or marketability of professional goodwill as a distinct and separate asset of the business, then such true goodwill would be deemed to be property that could be considered in the equitable distribution of marital property. In the instant case, however, there was no such evidence; therefore, the granting of a monetary award based upon an evaluation of goodwill as marital property subject to equitable distribution was reversible error.

The law practice was not totally devoid of marital property assets. There was a substantial business bank account upon which a monetary award might be based. As to that, the court will undoubtedly take into account Mrs. Prahinski's work in her husband's practice that contributed to the accumulation of that asset.

### *Indefinite Alimony* [6]

The trial court granted appellee indefinite alimony of $1,000 per month, to commence when appellant had

---

6. In this argument and the one concerning the equitable distribution *infra,* appellant questions whether the trial court considered the statutory factors as required by the Family Law Code. In response to this argument, we note that the trial court's order recites "that all of the required statutory factors regarding alimony, marital property, and monetary award hav[e] been considered and made part of the record." This language is sufficient for us to conclude that the trial court considered the required statutory factors. *See, Campolattaro v.*

completed his payments of the monetary award which represented the value of appellant's business.[7] Maryland Fam. Law Code Ann. § 11–106(c) permits a court to grant indefinite alimony under certain conditions. In the case *sub judice*, the trial court found that "the incomes of the parties following the divorce will be unconscionably disparate even after the [appellee] shall have made as much progress toward self-support as can reasonably be expected...." This finding comports with Md. Fam. Law Code Ann. § 11–106(c)(2), which states that the "court may award alimony for an indefinite period, if the court finds that even after the party seeking alimony will have made as much progress toward becoming self-supporting as can be reasonably expected, the respective standards of living of the parties will be unconscionably disparate." A trial court's finding and award of alimony is not to be disturbed on appeal unless the court exercised its discretion arbitrarily or its judgment was clearly wrong. *Brodak v. Brodak*, 294 Md. at 28–29, 447 A.2d 847. Having reviewed the evidence, we are not persuaded that the trial judge abused her discretion or exercised it arbitrarily or erroneously in awarding indefinite alimony. There was certainly sufficient evidence to support her finding that there is a gross disparity in earnings and incomes between the parties, which may be expected to continue indefinitely. Considering the efforts expended by appellee to further her husband's career and the circumstances surrounding the breakup of the

---

*Campolattaro,* 66 Md.App. 68, 502 A.2d 1068 (1986). Furthermore, a trial court is not required to articulate each step in its thought process, *Bangs v. Bangs,* 59 Md.App. 350, 475 A.2d 1214 (1984), and a recitation that the trial court considered the statutory factors is sufficient.

7. Because we have already held that the valuation of appellant's business was error, the award of that value and its payment schedule were reversed. Contingent on that award was the court's order for payment of alimony. Because the monetary award is no longer present, the court's order requiring that appellant begin alimony payment after the payment of the monetary award is reversed. As such, we need not reach appellant's third contention of trial court error.

marriage, we would be hard put to find error, arbitrariness, or abuse in the determination that continuation of such disparity would be unconscionable.

Despite our holding that on the basis of the evidence an award of permanent alimony was not improper, we are required to set aside this award for two reasons. First, it was ordered to begin *in futuro*, based upon certain assumptions as to the probable state of each party's finances after appellant had paid off the monetary award. This was erroneous as a matter of law. *See, Unkle v. Unkle*, 305 Md. 587, 597–98, 505 A.2d 849 (1986). Second, our holding that the monetary award must be vacated and remanded, because it was based on an improper valuation of the so-called "goodwill" of appellant's law practice as marital property, requires us to vacate the award of alimony as well. As we noted in *Campolattaro v. Campolattaro*, 66 Md.App. 68, 75, 502 A.2d 1068 (1986), "alimony and a monetary award are significantly interrelated and largely inseparable. The decision to award one or both must be made after a consideration of them in their mutual context." Here, the trial court specifically based its alimony award upon the monetary award, making the former contingent upon the latter. Furthermore, whether an award of alimony, either as to amount or duration, is error can only be determined in light of all the factors in the case, including a monetary award. *See Cotter v. Cotter*, 58 Md.App. 529, 473 A.2d 970 (1984). The remand on the issue of the monetary award will in all probability necessitate an alimony reconsideration. For these reasons, the award of indefinite alimony is also vacated and remanded for reconsideration.

On remand, the court will, of course, consider appellant's future earning capacity in its determination of alimony. *Brodak v. Brodak*, 294 Md. at 28, 447 A.2d 847. Appellee's expert witness apparently calculated appellant's anticipated future earnings as the value of the business. As we indicated *supra*, those expected future earnings should be considered in an alimony award rather than in an equitable

distribution. The court may wish to take into account, as an equitable factor in awarding alimony, appellee's contribution to appellant's business and its effect, if any, in enhancing the growth of his reputation and thus his prospects for future earnings. Md.Fam.Law Code Ann., § 11–106(b).

### Distribution of Marital Assets

Maryland's equitable distribution system involves a three-step process. The first is the determination of whether property is marital or separate. Md.Fam.Law Code Ann. § 8–203. *See also,* Md.Fam.Law Code Ann. § 8–201(e) (definition of marital property). Once property is determined to be marital, the second step is the placing of a value on that property. Md.Fam.Law Code Ann. § 8–204. The third step involves an adjustment of the equities and the rights of the parties which may require the court to grant a monetary award. Md.Fam.Law Code Ann. § 8–205. The Maryland courts have no authority to transfer the ownership of personal or real property from one party to the other. Md.Fam.Law Code Ann. § 8–202(a)(3). *See also, Ward v. Ward,* 48 Md.App. 307, 426 A.2d 443 (1981). With this law in mind, we now turn to the equitable distribution made by the court in the case *sub judice.*

Apparently, appellant does not contest the trial court's handling of steps one and two. What he contends is that the court erred in distribution of the marital assets under step three. We shall examine his assertions of error relative to the items of property he asserts were distributed incorrectly.

The court found all of the parties' property to be marital and stated that "the marital property of the parties is divided as follows:

| Husband | | Wife | |
|---|---|---|---|
| Greenacres | $ 50,000 | Glen Ave. | $ 93,000 |
| Cadillac | 13,000 | Toyota | 6,962 |
| Sailboat | 20,000 | Oldsmobile | 200 |
| IRA | 4,000 | IRA | 4,000 |
| ½ Keogh | 65,000 | ½ Keogh | 65,000 |
| ½ Business | 150,000 | ½ Business | 150,000 |
| Office Furn. | 10,200 | Household Furn. | 2,000 |

| ½ Norwich | $ 13,500 | ½ Norwich | $ 13,500 |
|---|---|---|---|
| ½ Fontana | 16,200 | ½ Fontana | 16,200 |
| Cash in Accts. | 46,000 | LMF | 37,500 |
| | $387,900 | | $388,362" |

In this division, the court gave no consideration (except for the business and the rental properties) to its own findings as to how the properties were titled. In effect, the above division attempts to transfer the ownership of some of the property from one party to another (more accurately, from both parties jointly to one of them), which is forbidden by Md.Fam.Law Code Ann. § 8–202(a)(3). The property erroneously allocated included:

*Glen Ave. Property,* the family home, which is titled in both parties as tenants by the entirety.

*Sailboat,* also titled in both parties as tenants by the entirety.

*A one-half Interest in LMF Partnership,* owned by the parties as tenants by the entirety.

By awarding the sailboat to appellant and the family home and the interest in the LMF partnership to appellee, instead of partitioning those properties by ordering that they be sold and the proceeds distributed to the parties, the court improperly transferred ownership of the property. Md.Fam.Law Code Ann. § 8–202(a)(3). Consequently, these contested provisions of the judgment must be vacated and remanded for a proper equitable distribution.

The parties also held as tenants by the entirety two rental properties identified as "Norwich Road" and "Fontana Drive." The court found these properties to be marital property and ordered that they be sold with the proceeds being evenly divided between the parties. Appellant asserts that this distribution was erroneous because the court failed to consider appellant's testimony that he made substantial contributions of cash to maintain the properties during the parties' separation whereas appellee made no contributions. Therefore, appellant argues, instead of ordering that the proceeds of the rental properties be distrib-

uted evenly, the court should have provided for reimbursement to appellant of his cash contributions to the properties. We disagree.

The cash that appellant testified he expended to maintain the properties after the parties separated was money acquired during the marriage. Property acquired during a separation and prior to divorce is marital property. *Campolattaro v. Campolattaro*, 66 Md.App. at 81, 502 A.2d 1068; *Cotter v. Cotter*, 58 Md.App. at 537, 473 A.2d 970; *Gravenstine v. Gravenstine*, 58 Md.App. 158, 177, 472 A.2d 1001 (1984). Accordingly, the funds that appellant used to maintain the rental properties were as much marital property as the real estate upon which those funds were expended. Ordering an equal distribution of the proceeds of sales of the rental properties, therefore, was not error.

Appellant also contests the distribution of the two automobiles to appellee. The court found that the Oldsmobile was titled in appellee's name; therefore, the award of the Oldsmobile to appellee was proper. The other automobile, a 1983 Toyota, was also awarded to appellee, despite the fact, as noted by the court, that there was no evidence as to how that vehicle was titled. Since we are remanding the case for proper distribution of the parties' properties, the trial court, upon remand, should receive evidence as to how the Toyota is titled in order that it may be distributed properly. *See,* Md.Transp.Code Ann. § 13–101.1 (each vehicle in Maryland requires a certificate of title).

The parties' household furnishings were distributed to the appellee. There being no evidence presented as to title or ownership of this property, there is nothing to rebut the presumption that the parties acquired and own the household furnishings as tenants by the entireties. *See, Bender v. Bender*, 282 Md. 525, 534, 386 A.2d 772 (1978). Consequently, unless the parties can agree upon a distribution, either of them may require a sale in lieu of partition. Md.Fam.Law Code Ann., § 8–202(b)(2).

■ Appellant complains that the court failed to include certain jewelry in the distribution. During the trial, appellee testified that she possessed jewelry worth approximately $5,000, some of which she had received as gifts from appellant, some as gifts from her mother, and some as payment for services rendered by appellee and appellant. The trial court made no findings on this evidence. On remand, the court should make a factual determination as to ownership of the jewelry and whether any of it is marital property, in order that it may be distributed, or if appropriate, considered in connection with the granting of a monetary award.

■ Appellant has not contested the transfer of any other property. Nevertheless, since the court's distribution is fraught with error, a remand for redistribution of many of the items may well result in upsetting the balance of equities that the trial court attempted to create. We deem it necessary, therefore, to vacate the entire distribution of property to allow the trial court to start with a clean slate in making an equitable distribution of the parties' property. In so doing, we remind the court that it cannot transfer title, Md.Fam.Law Code Ann. § 8–202(a)(3); if it concludes that distribution of property in accordance with title would be inequitable, it has the authority to grant a monetary award to either party in order to adjust that inequity.[8]

## Conclusion

The judgment of the Circuit Court for Prince George's County is affirmed as to the decree of absolute divorce but reversed and remanded for further proceedings as to distri-

---

**8.** Appellant asserts that the trial court erred in failing to consider the parties' debts in making the distribution. Because we are vacating the distribution for other reasons, we need not address that issue here. On remand, however, the court should consider the testimony concerning the marital debts prior to making any distribution. *See Schweizer v. Schweizer,* 301 Md. 626, 434 A.2d 267 (1984); *Green v. Green,* 64 Md.App. 122, 494 A.2d 721 (1985).

bution of property, grant of a monetary award, and alimony.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEE.